# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

---

| | | |
|---|---|---|
| **LILA WILSON, MATTHEW** | : | |
| **MARTINO, THOMAS WILSON,** | : | **CASE NO: 17-23033-CV-SCOLA** |
| **TERESA GARELLA, MARY BLUE,** | : | |
| **RYAN BROWN, BRIAN MAYTUM,** | : | |
| **LEIGH GLASBAND,** | : | |
| **NICK PANOPOULOS, CARISSA** | : | |
| **MACCHIONE, SYDNEE JOHNSON,** | : | |
| **JORGE CRUZ, DEBBIE GRAY,** | : | |
| **LORNE SPELREM, & ISMAEL** | : | |
| **ORRANTIA,** | : | |
| on behalf of themselves and all others | : | |
| similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **VOLKSWAGEN GROUP OF** | : | |
| **AMERICA, INC. and Volkswagen AG,** | : | |
| | : | |
| Defendants. | : | |

---

## THE PLAINTIFFS' RESPONSE IN OPPOSITION
## TO THE DEFENDANT'S MOTION TO DISMISS

## **Introduction**

A car's suspension system connects its wheels to the road at specified angles—called "specifications"—to ensure safe handling and tire control. ECF 26 at ¶¶ 9-11. "Camber" is one of these alignment specifications and refers to the angle at which the car's tires slant away from the vertical axis when viewed from the front or back of the car. *Id.* ¶ 13. Cars driven with incorrect camber develop improper and accelerated tire wear, which is a serious safety hazard. *Id.* ¶¶ 14-17. All Volkswagen CCs develop an incorrect camber, either as soon as they roll off the assembly line or through normal use. *Id.* ¶¶ 20-21. Thus, properly functioning suspension components would allow technicians to adjust the CCs' camber to get them back into proper alignment. *Id.* ¶ 18. The CCs' suspension components, however, are defective because they do not allow technicians to make the necessary adjustments to the car's camber (the "Defect"). *Id.* ¶ 19. As a result, CCs develop improper and accelerated tire wear, which cannot be fixed simply by replacing the cars' tires. *Id.* ¶¶ 22-23. Although Volkswagen has refused to offer any solution to this problem, the Defect can be permanently fixed by, for example, removing the CCs' existing control arm assemblies and replacing them with readily-available, after-market assemblies that allow for the necessary adjustments. *Id.* ¶¶ 26-28. In short, all Volkswagen CCs suffer from a Defect that causes their tires to wear out after a few thousand miles, creating both serious safety risks and a substantial diminution in the cars' value. *Id*. ¶¶ 9-23.

But, despite knowing about the Defect since 2010—at the latest—the Defendant, Volkswagen of America Group, Inc. ("Volkswagen"), has refused to acknowledge it or to authorize its dealers to make the easy repairs that would fix it. *Id.* ¶¶ 30, 32. Instead, Volkswagen ordered its dealers to lie about the Defect and forced CC owners, including the Plaintiffs, to pay out-of-pocket for tire repairs that, on the one hand, should have been covered by Volkswagen's warranty (the "NVLW") and, on the other, do not actually fix the problem. *Id.* ¶¶ 24-38.

Volkswagen concedes that some of the Plaintiffs have adequately pled implied warranty claims, but it nevertheless asks this Court to dismiss the remaining Plaintiffs' implied warranty claims, as well as all of the Plaintiffs' express warranty, fraud, and consumer protection claims. In doing so, however, Volkswagen ignores the Amended Complaint; draws inferences against,

rather than in favor of, the Plaintiffs; and seeks to impose upon the Plaintiffs legal requirements that do not exist. Its motion should be denied.[1]

## Argument[2]

### I.   The Plaintiffs' Warranty Claims

#### A.   The Plaintiffs have adequately alleged their express warranty claims

Volkswagen contends that the Plaintiffs' express warranty claims should be dismissed because the Plaintiffs have not identified a defect in "material and workmanship" that would be covered by the NVLW. ECF 34 at 3. But this Court should not, on a motion to dismiss—and prior to the taking of any discovery—indulge Volkswagen's invitation to make factual findings on whether the Defect is, or is not, a defect in material and workmanship. *See Bailey v. Janssen Pharmaceutica, Inc.*, 288 F. App'x 597, 605 (11th Cir. 2008) (holding that a party is not required "to know with specificity before discovery what was the likely source of the defect").[3] Instead, because the Plaintiffs allege that the CCs suffer from a defect in "parts and workmanship," ECF 26 at ¶ 31,[4] this Court should reject, at this early stage, Volkswagen's argument that the Defect is not covered by the NVLW.[5]

---

[1]   When considering a motion to dismiss, this Court must accept the complaint's factual allegations as true, construing them in the light most favorable to the Plaintiffs and drawing all reasonable inferences in the Plaintiffs' favor. *Heuer v. Nissan N. Am., Inc.*, No. 17-CV-60018-Scola, 2017 WL 3475063, at *3 (S.D. Fla. 2017).

[2]   We agree with Volkswagen that each Plaintiff is entitled to invoke the laws of his or her home state. ECF 34 at 3. But each Plaintiff is also entitled to the protections of the Virginia Consumer Protection Act ("VCPA"), Va. Code Ann. § 59.1-196, *et seq. See In re Volkswagen "Clean Diesel" Litig.*, 94 Va. Cir. 189, at *9-11 (2016). In *Clean Diesel*, Volkswagen argued, as it does here, that each plaintiff's claims were governed only by the law of the state in which he or she had purchased the car. *Id*. The court disagreed and held that, "unlike a tort claim such as fraud, nothing in the VCPA requires that a violation by a Virginia company involve a transaction taking place in the Commonwealth." *Id*. at *11.

[3]   *Accord Grasso v. Electrolux Home Prods.*, No. 15-CV-20774-Scola, 2015 U.S. Dist. LEXIS 119015, at *6 (S.D. Fla. 2015) (refusing to determine, at the pleadings stage, whether the alleged defect involved a design defect); *Alin v. Am. Honda Motor Co., Inc.*, 08-CV-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").

[4]   The Plaintiffs, it is true, also allege that the CCs suffer from a common design defect. But the Federal Rules permit the Plaintiffs to assert alternative theories of liability. *See* Fed. R. Civ. P. 8(e)(2); *see also Benefield v. Pfizer Inc.*, 103 F. Supp. 3d 449, 463 (S.D.N.Y. 2015) ("There is nothing inconsistent in pleading claims for both design defect and manufacturing defect: a

Moreover, Volkswagen glosses over the fact that its NVLW never actually excludes design defects from the universe of defects it covers. For example, in a section entitled "What is Not Covered," the NVLW sets out a long litany of things that are excluded from its protections. ECF 34-1 at 11-12, 60-61, 121-22, 171-72, 226-27, 278. Design defects, however, are never mentioned. Under the canon of *expressio unius est exclusio alterius*, this Court should presume that the NVLW's specific exclusion of certain defects works an implicit inclusion of other, unmentioned defects—viz. defects in design. *See Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1232 (S.D. Fla. 2014) ("Additionally, the list in the 'what is not covered' section does not state that design defects are not covered. The Court concludes that design defects are covered by Ford's express warranty.") (citation omitted). And, even if the NVLW's specific inclusion of a "material and workmanship" warranty created some ambiguity in this respect, that ambiguity should be construed against Volkswagen. *See Citro Florida, Inc. v. Citrovale, S.A.*, 760 F.2d 1231, 1232 (11th Cir. 1985); *Sanchez-Knutson*, 52 F. Supp. 3d at 1232; *accord* 16 C.F.R. § 701.3(a)(2) (stating that a written warranty must include "in simple and readily understood language, the following items of information: . . . A clear description and identification of products, or parts, or characteristics, or components or properties . . . excluded from the warranty").

In any case, the Plaintiffs have also alleged that Volkswagen provided them with an express warranty outside of the NVLW. Under Section 2-313(1)(a) of the U.C.C., "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the good shall conform to the affirmation or promise." And, in the warranty booklet, Volkswagen made the following

---

plaintiff is permitted to advance alternative theories of liability for a defendant's allegedly wrongful conduct."). More importantly, the Plaintiffs have not conceded that the CCs' components in fact comport with Volkswagen's design—such a concession would be impossible without the benefit of discovery—and the Court should not resolve this factual question now.

[5] What Volkswagen does not tell this Court is that it tried—and lost—this same argument in a nationwide class action just last year. *See In re Volkswagen Timing Chain Prod. Liability Litig.*, No. 16-CV-2765, 2017 WL 1902160 (D.N.J. May 8, 2017). In that case, the plaintiffs sued Volkswagen over a defective timing chain. In its motion to dismiss the plaintiffs' express warranty claims, Volkswagen argued that the plaintiffs complained of a "design defect" that was not covered by the Warranty. *Id.* at *12. The court rejected Volkswagen's argument as both too fact-intensive for the motion-to-dismiss stage and inconsistent with the plaintiffs' allegations, which identified how specific components of the timing chain system were defective. *Id.* There is no reason for the Court to reach a different result here.

guarantee: "With proper maintenance and care, your Volkswagen model will continue to provide you with a dependable and safe driving experience." ECF 26 at ¶ 236. Relying on U.C.C. § 2-313(1)(a), state and federal courts across the country have consistently interpreted similar guarantees as creating an express warranty. *See, e.g., Bell Sports Inc. v. Yarusso*, 759 A.2d 582, 592-93 (Del. 2000).[6] This Court should follow those decisions here. Moreover, because Volkswagen extended this guarantee in the warranty booklet itself, it necessarily was part of the "basis of the bargain" under U.C.C. § 2-313(1)(a). *See Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 623-24 (Ohio Ct. App. 2003). Likewise, any effort Volkswagen may have made elsewhere in the warranty booklet to disclaim this warranty is ineffective. *See, e.g., Oliver*, 2015 WL 3938633, at *11 ("[U]nder U.C.C. § 2-316, a warranty disclaimer inconsistent with an express warranty is inoperative.").

### B. The Louisiana Plaintiff's claim for breach of express warranty is viable

Volkswagen correctly notes that Louisiana warranty claims must be asserted under Louisiana's redhibition statute. *See In re Ford Motor Co. Ignition Switch Prod. Liab. Litig.*, No. 96-CV-1814, 2001 WL 1266317, at *15 (D.N.J. 1997). But Louisiana law is clear that a plaintiff's failure to bring an express warranty claim under the redhibition statute does not warrant dismissal where, as here, the complaint avers that, had she known of the defect, the plaintiff would not have purchased the car. *Id.* (holding that, although complaint did not specifically mention the redhibition statute, plaintiffs' allegation that the "defect render[ed] their [] vehicles so imperfect that plaintiffs would not have purchased their cars if they had known of the defect" was sufficient to survive motion to dismiss). Because the Louisiana Plaintiff has alleged precisely that, ECF 26 at ¶¶ 310, 469, this Court should deny Volkswagen's motion to dismiss.

### C. The Plaintiffs' implied warranties have not expired

Volkswagen breached the implied warranty of merchantability by manufacturing and selling defective vehicles. ECF 26 at ¶¶ 9-23. The Amended Complaint alleges that Volkswagen

---

[6] *Accord Jensen v. Seigel Mobile Homes Grp.*, 105 Idaho 189, 668 P.2d 65, 71-72 (1983); *Kinlaw v. Long Mfg. N.C., Inc.*, 298 N.C. 494, 259 S.E.2d 552, 557 (1979); *Hawkins Constr. Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643, 654-55 (1973); *Oliver v. Funai Corp., Inc.*, No. 14-CV-04532, 2015 WL 3938633, at *10-11 (D.N.J. 2015); *Fire Ins. Exch. v. Electrolux Home Prods.*, No. 05-CV-70965, 2006 WL 2925286, at *5-6 (E.D. Mich. 2006); *Rinehart v. Sonitrol of Dallas, Inc.*, 620 S.W.2d 660, 661-63 (Tex. App.—Dallas 1981); *Mittasch v. Sea Lock Burial Vault, Inc.*, 42 A.D.2d 573, 573-74 (N.Y. App. Div. 1973).

knew about the Defect and, through its own representations to its authorized dealers, actively concealed it. *Id.* ¶¶ 24-38, 203, 208, 212, 216, 224-25, 228-37. Based on these allegations, Volkswagen concedes that most of the Plaintiffs have asserted viable implied warranty claims and seeks dismissal only of the Missouri, North Carolina, Georgia, and Arizona claims on the grounds that (1) the NVLW effectively limited the implied warranties to the NVLW's 3 year/36,000-mile express warranty period, and (2) these Plaintiffs purchased their cars—or their defects manifested—outside of that warranty period. ECF 34 at 7. Here, again, Volkswagen ignores the Amended Complaint and misstates the law.

To begin with, a seller may limit the duration of an implied warranty only "if such limitation is conscionable." 15 U.S.C. § 2308(b). The Plaintiffs have adequately pled that Volkswagen's warranty limitations are unconscionable and therefore unenforceable. ECF 26 at ¶¶ 247-49. The federal courts have routinely held that the question of whether a warranty is unconscionable is ***a question of fact*** inappropriate for resolution at the pleading stage. *See, e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 293 (4th Cir. 1989); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006). The Court should deny Volkswagen's motion on this basis alone.

In any case, a manufacturer's knowledge of a defect at the time of sale is the most significant factor in determining whether a warranty's durational limitations are unconscionable. *See Carlson*, 883 F.2d at 294; *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1359 (N.D. Ga. 2013); *Bussian*, 411 F. Supp. 2d at 622; *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, No. 10-CV-23869, 2012 WL 1570057, at *10-11 (S.D. Fla. 2012). As we discuss in detail below, *see* § II.A., *infra*, the Plaintiffs have alleged extensive and specific facts from which Volkswagen's knowledge of the Defect can be reasonably inferred. *See, e.g.*, ECF 26 at ¶ 249. In response, Volkswagen cites to *McCabe* for the proposition that a manufacturer's "knowledge of the alleged defect at the time of sale, ***standing alone***, is insufficient to render the NVLW's time and mileage limitations unconscionable." ECF 34 at 9 (emphasis added). But other courts have disagreed, holding that a manufacturer's knowledge, standing alone, ***is*** sufficient to render a warranty's time and mileage limitations unconscionable. *In re Samsung DLP TV Class Action Litig.*, No. 07-CV-2141, 2009 WL 3584352, at *4-5 (D.N.J. 2009); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-CV-385, 2007 WL 4591281, at *4-5 (D.N.J. 2007).

5

Even if knowledge were, as Volkswagen suggests, insufficient on its own to support a finding of unconscionability, the Plaintiffs' allegations support a reasonable inference that all of the other factors relevant to the question of unconscionability weigh strongly in favor of the Plaintiffs here. For instance, the Amended Complaint avers that (1) CC buyers lacked notice of the Defect or an opportunity to discover it prior to the sale, ECF 26 at ¶ 249; (2) Volkswagen knew that CC buyers would have to cover the costs of repairing the Defect, *id*. ¶¶ 24, 31, 32, 38; and (3) Volkswagen knew that the Defect would likely limit the CCs' intended use—by, for example, rendering them unsafe, *id.* ¶¶ 14-17, 19-23, 24, 28-29, 249. *See Carlson*, 883 F.2d at 294-96; *In re Porsche Cars*, 880 F. Supp. 2d at 822. The Plaintiffs, in short, have done far more than plead mere knowledge here. *Porsche*, 880 F. Supp. 2d at 824.[7]

Volkswagen's contention that the implied warranties of the Missouri, Arizona, Georgia, and North Carolina Plaintiffs expired because those Plaintiffs did not seek tire replacements within the applicable warranty period fares little better. ECF 34 at 7. Under the laws of these four states, the "pertinent time period in determining merchantability of the goods is at the time of the sale." *Plunk v. Hedrick Concrete Prods. Corp.*, 870 S.W.2d 942, 946 (Mo. App. 1987); *Dietz v. Waller*, 141 Ariz. 107, 112 (1984); *Soto v. CarMax Auto Superstores, Inc.*, 271 Ga. App. 813, 814-15 (2005); *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 683 (2002). Because the Missouri, Arizona, Georgia, and North Carolina Plaintiffs have alleged that their CCs were defective at the time they were sold, ECF 26 at ¶¶ 113, 138, 319-20, 507, those defects necessarily manifested within—rather than outside of—the warranty period.[8]

---

[7] Volkswagen also argues that the Plaintiffs cannot meet the standard for unconscionability because they could have purchased a different model vehicle. ECF 34 at 8. But that is not the standard for unconscionability, particularly where, as here, a manufacturer knowingly concealed a defect and thereby prevented the buyer from discovering it within the warranty period. *See, e.g., Skeen v. BMW of N.A., LLC.*, No. 13-CV-1531, 2014 WL 2833628, at *15 (D.N.J. 2014).

[8] Volkswagen cites two cases for its position that the Missouri, Arizona, Georgia, and North Carolina Plaintiffs' warranties have expired. ECF 34 at 7 (citing *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227 (M.D. Fla. 2009) and *Speier-Roche v. Volkswagen Grp. of America, Inc.*, No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)). But both cases applied Florida—rather than Missouri, Arizona, Georgia, or North Carolina—law. More importantly, neither case provides any analysis of the issue. *Speier-Roche*, for instance, held, without explanation, that the plaintiff's claims had expired under the applicable warranty. 2014 WL 1745050, at *8. And *Brisson*, in just one sentence, dismissed an implied warranty claim because the plaintiffs "failed to allege that they experienced the defect within the warranty period." 602 F. Supp. 2d at 1231. Here, by contrast, the Plaintiffs have alleged that their CCs "experienced" the Defect at the time

### D. Privity

Volkswagen next argues that the Ohio, Georgia, and North Carolina Plaintiffs have failed to establish the requisite degree of privity with Volkswagen. *See* ECF 34 at 9. Here, again, Volkswagen is mistaken.

In Ohio, "privity will lie between a manufacturer and an ultimate consumer if either the manufacturer is so involved in the sales transaction that the distributor merely becomes the manufacturer's agent or if the consumer is an intended third-party beneficiary to a contract." *Norcold*, 154 Ohio App. 3d at 607. The Ohio Plaintiff has satisfied both tests. On the one hand, he has alleged that he was an intended third-party beneficiary of the transaction between Volkswagen and its authorized dealer. ECF 26 at ¶¶ 250-51. On the other, he has alleged facts supporting the plausible inference that the authorized dealers were Volkswagen's agents. *Id.* ¶¶ 24, 32, 197-212, 227-52.[9]

In Georgia, "privity exists between a buyer and manufacturer" for purposes of an implied warranty claim "if the manufacturer extends an express warranty to the buyer." *Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272,  1288 (S.D. Ga. 2010) (citing *Chrysler Corp. v. Wilson Plumbing Co., Inc.*, 237 S.E.2d 402, 406 (Ga. Ct. App. 1977)).[10] Although the

---

of sale—that is, well within the warranty period. ECF 26 at ¶¶ 106-07, 181-82, 319-20, 507. And, because the question of merchantability under Missouri, Arizona, Georgia, and North Carolina law is determined at the time of sale, the Plaintiffs' allegations that their vehicles were defective when sold are sufficient, at this stage of the proceedings, to demonstrate that, at some point within the warranty period, the vehicles were not merchantable precisely because they were defective. *See Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 360 (Mo. App. 1989); *Dietz*, 141 Ariz. at 111-12.

[9] Volkswagen cites *Curl v. Volkswagen of America*, 114 Ohio St. 3d 266, 272-73 (2007), to support its view that Ohio has eliminated the agency exception to the privity requirement. ECF 34 at 9 n.9. But *Curl* said no such thing. Instead, *Curl* held only that the plaintiff had failed in his complaint to plead the existence of an agency relationship. 114 Ohio St. 3d at 272-73. In this respect, *Curl* rather supports the Plaintiffs' view. After all, *Curl*'s holding—that the plaintiff should have pled the agency exception in his complaint—presupposes the availability of the agency exception. In any case, the Ohio Plaintiff ***has*** averred that Volkswagen's distributors are agents of Volkswagen. ECF 26 ¶¶ 24, 32, 197-212, 227-52.

[10] Volkswagen cites to *Monticello v. Winnebago Indus., Inc.*, 369 F. Supp. 2d 1350, 1361 (N.D. Ga. 2005), which states a contrary view. ECF 34 at 9. But the defendant in *Terrill* likewise cited *Monticello* for the proposition that, under Georgia law, a manufacturer's extension of an express warranty does not satisfy the privity element of an implied warranty claim. After reviewing the state of Georgia law, the *Terrill* Court refused to follow *Monticello*. This Court should follow the well-reasoned decision in *Terrill* and similarly reject Volkswagen's reliance on *Monticello*.

Georgia Plaintiff purchased a pre-owned CC, Georgia law is clear that,"[w]hen a manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with the ultimate consumer is deemed to exist." *Copy Techs., Inc. v. Mitsubishi Kagaku Imaging Corp.*, No. 14-CV-839, 2015 WL 13333501, at *4 (N.D. Ga. 2015).[11] Volkswagen unambiguously conveyed an express warranty to the ultimate consumers of CCs when, in the NVLW, it said: "The [NVLW] is automatically transferred without cost if the ownership of the vehicle changes within the Warranty period." ECF 26 at ¶ 246. And, while it is undisputed that the Georgia Plaintiff purchased his CC outside of the "Warranty period," that durational limitation is, as we have shown, unconscionable and should not be enforced. *See* § I.C., *supra*. Without that durational limitation, then, the NVLW conveyed its warranties to the CCs' ultimate consumers, including the Georgia Plaintiff—as a result of which, under Georgia law, "privity with the ultimate consumer is deemed to exist." *Copy Techs.*, 2015 WL 13333501, at *4.

Finally, Volkswagen cites no case for its view that North Carolina does not recognize an "intended beneficiary" exception to the privity requirement.[12] This omission is unsurprising: In North Carolina, "[i]f the third party is an intended beneficiary, the law implies privity of contract." *Coastal Leasing Corp. v. O'Neal*, 103 N.C. App. 230, 236 (1991). Here, unlike the plaintiff in *Kelly*, the North Carolina Plaintiff has alleged that he is a third-party beneficiary to the transaction between Volkswagen and its dealer. ECF 26 at ¶¶ 250-51.[13] As such, he has satisfied the privity requirements of North Carolina law.

---

[11] *Cf. Evershine Prods., Inc. v. Schmitt*, 202 S.E.2d 228, 231 (Ga. Ct. App. 1973) ("[I]f a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant to the original purchaser . . . . ***This does not mean, however, that there can be no warranties if the manufacturer or producer makes an express warranty to the ultimate consumer***. This is commonly done in the sale of a number of items, ***such as automobiles*** and household appliances, etc.") (emphasis added).

[12] Volkswagen does cite to *Kelly v. Georgia-Pacific LLC*, an inapposite case where the court did not "address this state-law issue because [the plaintiff] d[id] not allege in the complaint that he is a third-party beneficiary to the contract[.]" 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009).

[13] While the North Carolina Plaintiff, like the Georgia Plaintiff, purchased a pre-owned CC, ECF 26 at ¶¶ 111-12, we can see no reason why he is any less an intended beneficiary of the transaction between Volkswagen and its dealer than the original purchaser was. Put another way, to the extent that the warranties that flowed as a result of Volkswagen's sale of the CC to its dealer were for the benefit, not of the dealer (who never intended to drive the vehicle), but of the

### E.  Notice

Volkswagen moves to dismiss the Georgia, Texas, and Missouri Plaintiffs' warranty claims for lack of notice. ECF 34 at 4-5, 9. But each of these states has adopted the U.C.C.'s liberal requirement that the plaintiff do no more than provide the defendant with notice within a "reasonable time" of discovering the breach. U.C.C. § 2-607(3)(a).[14] Notably, notice is a question of fact not susceptible to dismissal at the pleadings stage unless "there is no room for ordinary minds to differ about the proper conclusion to be drawn from the evidence." *See, e.g., Lochinvar*, 930 S.W.2d at 190; *DynaSteel Corp. v. Black & Veatch Corp.*, 698 F. Supp. 2d 1170, 1174 (W.D. Mo. 2010); *DBI Distributors*, 232 Ga. App. at 317. There is plenty of room for disagreement here.

To begin with, under Georgia law, "service of a complaint satisfies the notice requirement if no prejudice to the defendant results." *Terrill*, 753 F. Supp. 3d at 1287 (citing *Wal-Mart Stores, Inc. v. Wheeler*, 262 Ga. App. 607, 610-11 (2003)). Volkswagen does not deny that it was served with the Amended Complaint, and it has made absolutely no showing that it was prejudiced by any alleged lack of prior notice. In Georgia, that is the end of the matter.

Volkswagen's motion to dismiss the Missouri Plaintiff's claim fares no better. The relevant Missouri statute says nothing more than that the plaintiff must provide notice within a "reasonable time." Mo. Rev. Stat. § 400.2-607(3)(a). Notably, the statute does not specify what particular form the notice must take, does not impose restrictions on constructive notice, and does not require that the notice be provided prior to service of the complaint. *Id.* The statute's refusal to render compulsory the precise conditions Volkswagen now claims it requires should be dispositive here. SCALIA & GARNER, READING LAW, at 57-58 ("[T]he limitations of a text—what a text chooses ***not*** to do—are as much a part of its 'purpose' as its affirmative dispositions.").[15]

---

CCs' ultimate consumers, the North Carolina Plaintiff is likewise an intended beneficiary of the warranties conveyed in that sale. This is particularly true with automobile sales, where secondary and tertiary transactions are a foreseeable—even expected—aspect of the market. To list but just one example of this phenomenon, all car manufacturers advertise, along with a vehicle's market price, its expected "residual value." *See, e.g.*, Autotrader, *Calculate Your Vehicle's Residual Value*, https://www.autotrader.com/car-news/calculate-your-vehicles-residual-value-33113.

[14] *See, e.g.*, *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 190 (Tex. App.—Dallas 1996); *Jay V. Zimmerman Co. v. Gen. Mills, Inc.*, 327 F. Supp. 1198, 1204 (E.D. Mo. 1971); *DBI Distributors, Inc. v. Beaver Computer Corp.*, 232 Ga. App. 316, 317 (1998).

[15] Volkswagen cites no Missouri state court decision for the proposition that Missouri's notice statute requires pre-suit notice. Instead, Volkswagen cites an unpublished opinion from the

Finally, Volkswagen's claim that the Texas Plaintiffs failed to notify it of the Defect, ECF 34 at 4, ignores Texas law. Under Texas law, a buyer need only set forth "[a] general expression of [his] dissatisfaction" with the product to satisfy Texas' notice requirement. *Lochinvar*, 930 S.W.2d at 189. Here, Volkswagen directed CC owners to take their complaints to Volkswagen's authorized dealers and used those dealers as its agents. ECF 26 at ¶¶ 197, 231, 234. Both Texas Plaintiffs followed Volkswagen's instructions and complained about the Defect to Volkswagen's authorized dealers. ECF 26 at ¶¶ 89-90, 171-72. The dealers then forwarded the Plaintiffs' complaints directly to Volkswagen. *Id*. ¶¶ 209-12. In sum, the Texas Plaintiffs have satisfied Texas' notice requirement here.[16]

---

Western District of Missouri, which, after ignoring the plain text of the statute and injecting its own view of the statute's purpose and legislative history, held that the statute does require such notice. *Budach v. Nibco, Inc.*, No. 14-CV-04324, 2015 WL 6870145, at *4-5 (W.D. Mo. 2015). But *Budach* violated the first principle of statutory construction, which is that courts must begin the interpretive exercise by giving meaning to the words of the statute itself. *See, e.g., United States v. Great Northern Ry.*, 287 U.S. 144, 154 (1932) (Cardozo, J.) ("We have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute."); *cf. FTC v. Bunte Bros.*, 312 U.S. 349, 350 (1941) (Frankfurter, J.) ("Spurious use of legislative history must not swallow the legislation so as to give point to the quip that only when legislative history is doubtful do you go to the statute. While courts are no longer confined to the language, they are still guided by it."). More than that, *Budach*, which conceded that no Missouri court had ever ruled on this issue, acknowledged that the pre-suit notice requirement is not only "unfair," but also illogical, calling its purported purpose of facilitating pre-suit litigation "more a trap than a meaningful tool to avoid protracted litigation." 2015 WL 6870145, at *4. Either way, several other states with near-identical notice statutes have interpreted those statutes as imposing no pre-suit notice requirement. *See, e.g., Bednarski v. Hideout Homes & Realty, Inc., A Div. of U.S. Homes & Properties, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. 03-CV-4558, 2010 WL 2813788, at *65 (D.N.J. 2010) (noting that the filing of a complaint constituted sufficient notice under Georgia, Massachusetts, Michigan, New York, and Pennsylvania law). In fact, at least one federal court has held, two years after *Budach*, that Missouri's notice statute itself requires ___**no**___ pre-suit notice to a manufacturer that, like Volkswagen, did not sell the vehicle directly to the plaintiff. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 5495091, at *26 (E.D. Mich. 2017). For all of these reasons, this Court should reject *Budach*'s reasoning here.

[16] *See* Tex. Bus. & Com. Code § 1.202(d) ("A person 'notifies' or 'gives' a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it.").

### F.   The Statute of Limitations

Volkswagen contends that the warranty claims brought by the New Jersey, Ohio, Texas, Arizona, Virginia, and Louisiana Plaintiffs are barred by those states' statutes of limitations.[17] In support, Volkswagen cites to each state's iteration of U.C.C. § 2-725,[18] which provides that "[a] cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." But Volkswagen ignores Section 2-725(4)'s admonition that the U.C.C. "does not alter the law on tolling of the statute of limitations[.]" Because the U.C.C. does not abrogate state statute of limitations law, this Court must determine whether, and under what circumstances, these states permit the tolling of their respective statutes. As Volkswagen concedes, ECF 34 at 5, each of these states permits the tolling of its statute of limitations where, as here, the defendant fraudulently concealed the defect.[19]

Noting that only "affirmative and active concealment" can toll a statute of limitations, Volkswagen contends that the Plaintiffs' allegations fail to meet the specificity requirements of Fed. R. Civ. P. 9(b). ECF 34 at 5-6. But the Amended Complaint meticulously avers that Volkswagen "affirmatively" and "actively" concealed the Defect when it (1) intentionally put misleading statements in the Owner's Manual and in the NVLW; (2) knowingly misled the Plaintiffs into believing that their tires were wearing for reasons having nothing to do with the Defect; and (3) directed its authorized dealerships to lie to the Plaintiffs about the causes of the

---

[17]  As a preliminary matter, the Eleventh Circuit has held that "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred" because "[a] statute of limitations bar is an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

[18]  Louisiana has not adopted the U.C.C. Instead, it follows the Louisiana Law of Sales, LSA-C.C. Art. 2438 *et seq*. In any case, Volkswagen's reliance on LSA-C.C. Art. 2534(A) is misplaced since, by its own terms, that section applies only to actions in redhibition where the seller is **_not_** aware of the relevant defect. Here, by contrast, the Amended Complaint alleges that Volkswagen was aware of the Defect. ECF 26 at ¶¶ 196-226. Accordingly, the applicable Louisiana statute is LSA-C.C. Art. 2534(B), not LSA-C.C. Art. 2534(A). And, under LSA-C.C. Art. 2534(B), an action for redhibition must lie within "one year from the day the defect was discovered by the buyer." Here, the Louisiana Plaintiff did file her lawsuit within one year of discovering the Defect. *See* **Exhibit A** (Decl. of Debbie Gray).

[19]  *See, e.g.*, *Foodtown v. Sigma Marketing Sys., Inc.*, 518 F. Supp. 485, 488 (D.N.J. 1980); *Thornton v. State Farm Mut. Auto Ins. Co., Inc.*, No. 06-CV-00018, 2006 WL 3359448, at *6 (N.D. Ohio 2006); *Trigo v. TDCJ-CID Officials*, No. H-05-CV-2012, 2010 WL 3359481, at *11 (S.D. Tex. 2010); *Acton v. Morrison*, 62 Ariz. 139, 144 (1945); *Newman v. Walker*, 270 Va. 291, 298 (2005).

premature tire wear they were experiencing. ECF 26 at ¶¶ 24-25, 32-34, 86, 95, 127, 163, 180, 188, 224-25, 227-37, 253, 256. Given these specific allegations of Volkswagen's "affirmative" and "active" concealment, this Court should reject Volkswagen's suggestion that the various state statutes of limitations somehow bar the Plaintiffs' claims.[20]

The relevant state statutes of limitations are also tolled by the doctrine of equitable estoppel. Volkswagen concedes that the doctrine of equitable estoppel applies to all but the Ohio and Arizona Plaintiffs. ECF 34 at 7. Even this limited challenge, though, should be denied. To begin with, under Ohio law, the question of whether Volkswagen's affirmative misrepresentations precluded the Plaintiffs from bringing their claims within the applicable limitations period is a question of fact that cannot be resolved on a motion to dismiss. *See, e.g.*, *Helman v. EPL Prolong, Inc.*, 139 Ohio App. 3d 231, 245-46 (2000). And, under Arizona law, "[i]n instances involving equitable tolling, courts have recognized that, as a matter of equity, a defendant whose affirmative acts of fraud or concealment have misled a person from either recognizing a legal wrong or seeking timely legal redress may not be entitled to assert the protection of a statute of limitations." *Porter v. Spader*, 225 Ariz. 424, 428 (Ct. App. 2010). Here, the Ohio and Arizona Plaintiffs have adequately alleged that Volkswagen's affirmative misrepresentations regarding the safety and reliability of their CCs prevented them from filing

---

[20] Volkswagen relies on this Court's decision in *Heuer*, 2017 WL 3475063 (S.D. Fla. 2017), for the proposition that the Plaintiffs have failed to plead active concealment with the requisite particularity. ECF 34 at 6. But, as this Court noted, *Heuer* involved no allegations that Nissan took affirmative steps to defraud the public or the *Heuer* Plaintiff. To the contrary, Heuer's averment that "Nissan 'instruct[ed] its dealers . . . not to replace the defective dashboards' . . . does not go beyond 'inaction and nondisclosure[.]'" 2017 WL 3475063, at *3. Even Heuer's allegation that Nissan falsely downplayed the dashboard defect failed to meet Rule 9's specificity requirement because, although "Heuer alleges what was said by Nissan's representatives in response to the news segment," he "does not specifically allege who in particular made the statement, when the statement was made, or where the statement was made." *Id.* at *4. Here, by contrast, the Amended Complaint specifically alleges that Volkswagen knew of the Defect, that Volkswagen affirmatively lied to the Plaintiffs about the causes of their premature tire wear, and that Volkswagen conspired with its authorized dealers by directing those dealers to falsely and fraudulently blame the Plaintiffs (or the tire manufacturers) for the premature tire wear. ECF 26 at ¶¶ 24-25, 32-34, 86, 95, 127, 163, 180, 188, 224-25, 227-37, 253, 256. In addition, the Amended Complaint at least several discrete examples of affirmative falsehoods ("what") made by Volkswagen representatives ("who") in response to online complaints filed by CC owners at particular moments in time ("when") and on specific websites ("where"). *Id.* ¶¶ 223(e), 223(k), 223(m), 223(o), 223(r), 223(u), 223(v).

their claims within the applicable limitations period. ECF 26 at ¶ 256. In Arizona and Ohio, those allegations are sufficient at this stage of the litigation.[21]

## II.     The Plaintiffs' Common Law Fraud And Consumer Protection Claims

Volkswagen asks this Court to dismiss the Plaintiffs' common law fraud and statutory consumer protection claims because, it says, (1) it did not know about the Defect; and (2) the Plaintiffs have not pled a causal nexus between its wrongdoing and their injuries. ECF 34 at 11-15. Volkswagen mischaracterizes the nature and extent of its own misconduct, ignores the Amended Complaint, and misstates the elements of statutory and common law fraud.[22]

### A.     Volkswagen knew about the Defect and actively concealed it

"[A]llegations of knowledge and intent are not subject to the particularity requirement." *Cordell Consultant, Inc. Money Purchase Plan & Trust v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014); *see also* Fed. R. Civ. P. 9(b). Thus, at most, the Plaintiffs need only plead sufficient facts for the Court to find it "plausible," after "accept[ing] [the Plaintiffs'] factual allegations as true and draw[ing] all reasonable inferences in [the Plaintiffs'] favor," that Volkswagen knew about the Defect. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 870 F.3d 1262, 1270 (11th Cir. 2017). The Plaintiffs have easily met that standard.

Volkswagen's supervision of and control over its dealerships was so pervasive that the dealerships were, for all relevant purposes, Volkswagen's agents. ECF 26 at ¶¶ 239-45. For instance, Volkswagen required CC owners to have their vehicles repaired only at Volkswagen

---

[21] Volkswagen also argues that the Plaintiffs have not met the minimum pleading standard set forth in Fed. R. Civ. P. 8 because, it says, we have "lump[ed] the two Defendants together." ECF 34 at 6-7. But the Eleventh Circuit has made clear that pleadings fail to satisfy Rule 8 only when "they fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320-21 (11th Cir. 2015) (citation omitted). The Amended Complaint adequately informs both Volkswagen entities that (1) both received notice, through various means, of the defective conditions of the vehicles they were selling in the United States; (2) both worked to conceal the Defect; and (3) both instructed their authorized dealers to lie to the Plaintiffs about the causes of their premature tire wear. ECF 26 at ¶¶ 209-237. There can be no lack of notice where, as here, the Amended Complaint clearly alleges that both defendants conspired and colluded with one another to perpetrate a sophisticated fraud. *Kyle K. v. Chapman,* 208 F.3d 940, 944 (11th Cir. 2000) ("The fact that defendants are accused collectively does not render the complaint deficient. The complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.").

[22] Volkswagen's state-specific arguments, ECF 34 at 15-20, fail for similar reasons.

dealerships, *id.* ¶ 197, and exercised extremely close supervision of—and control over—the repairs those dealerships performed, *id.* ¶¶ 197-212.[23]

Beginning at least in 2010, ***thousands*** of CC drivers have taken their vehicles into a Volkswagen dealership to complain about improper and accelerated tire wear. *Id.* ¶ 200. A description of each of those thousands of complaints was logged into Volkswagen's database, along with the vehicle's then-current mileage. *Id.* ¶ 210. Moreover, Volkswagen's dealerships regularly contacted their Volkswagen regional service representatives about the improper and accelerated tire wear because only those representatives could authorize the dealers to provide repairs at no cost and because those representatives were the dealers' primary points of contact for learning about—and training to fix—problems with Volkswagen vehicles. *Id.* ¶¶ 205-07.

The Amended Complaint quotes extensively from dozens of complaints filed with NHTSA by CC users. *Id.* ¶¶ 220(b), 220(c), 220(g), 220(i), 223(a), 223(d), 223(g), 223(h), 223(m), 223(u), 223(v), 223(w), 223(x). Because every single CC manufactured and sold since 2009—when Volkswagen first sold the car in the United States—suffers from precisely the same defect, *id.* ¶¶ 19-23, this Court may reasonably infer that Volkswagen was on notice of the Defect almost immediately after it began selling CCs in 2009.[24]

The Amended Complaint identifies three different sources of consumer complaints about the Defect that, taken together, only begin to hint at the likely volume of complaints Volkswagen dealers received—and then reported to Volkswagen—about the Defect[25]: (1) the Amended Complaint identifies, by date and dealership, 22 instances in which one of the named plaintiffs him or herself reported the Defect to a Volkswagen dealer[26]; (2) the Amended Complaint alleges that Volkswagen carefully monitors complaints consumers file about Volkswagen vehicles with

---

[23] For example, every consumer complaint received—or repair conducted—by a Volkswagen dealership was, pursuant to a Volkswagen directive, logged into Volkswagen's databases. *Id.* ¶ 209.

[24] That Volkswagen received prompt notice of the Defect is further corroborated by reports that Volkswagen dealers were receiving complaints about the Defect as early as 2010 and 2011, *id.* ¶¶ 63-64, 157-59, 223(o); that Volkswagen itself was receiving similar complaints as of 2010, *id.* ¶ 220(l); and that complaints about the Defect were proliferating in online fora as early as 2011, *id.* ¶ 223(a).

[25] The sheer number of these complaints raises at least a plausible inference that Volkswagen learned of the Defect from sources other than its dealers.

[26] *See* ECF 26 at ¶¶ 73, 76, 80, 81, 83, 89, 99, 102, 116, 121, 123, 131, 132, 153, 159, 171, 175, 177, 178, 192.

NHTSA,[27] *id.* ¶ 219, and identifies 13 NHTSA complaints about improper and accelerated tire wear on Volkswagen CCs, such as an August 15, 2013, complaint that "my tires are getting used up, very rapidly as little as 2-3 months," *id.* ¶ 220(a); and (3) the Amended Complaint alleges that Volkswagen monitors online fora for complaints about its vehicles, *id.* ¶ 222, quotes a specific instance in which Volkswagen responded to an online complaint about premature tire wear on a CC, *id.* ¶ 223(o), and identifies 37 different complaints—from a select smattering of online fora—about improper and accelerated tire wear on its CCs, *id.* ¶¶ 223(a)-(kk).

Volkswagen's only response to these detailed allegations about its knowledge of the Defect is to quibble about the anonymity of the online complaints, ECF 34 at 14, and to label as "vague" the Plaintiffs' allegations about their own experiences, *id.* at 15. But Volkswagen's "knowledge" need only be alleged "generally," Fed. R. Civ. P. 9(b), and the Plaintiffs have more than satisfied that low threshold here. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008); *McCabe*, 948 F. Supp. 2d at 1366-67.

    **B**.    **The Plaintiffs have adequately alleged causation**

Except for a few state-specific arguments discussed below, Volkswagen does not dispute that the Plaintiffs have adequately alleged their fraud and consumer protection claims based on its material omissions. As such, those claims can proceed solely on an omission theory. Nevertheless, Volkswagen argues that the Plaintiffs have not established causation or reliance with respect to the affirmative misrepresentations it made because, it says, the Plaintiffs have not alleged "pre-purchase, personal exposure to or reliance on" those misrepresentations. ECF 34 at 12-13. Volkswagen is wrong for the following four reasons:

First, Volkswagen's dealers relied on Volkswagen's false statements to deny warranty coverage for the improper and accelerated tire wear the Defect caused, thereby injuring the Plaintiffs by forcing them needlessly to pay out-of-pocket for repairs that should have been covered by the NVLW. *Id.* ¶¶ 29-32. The Plaintiffs likewise relied on Volkswagen's misrepresentations when, rather than insisting that Volkswagen cover the costs of the repairs pursuant to the NVLW, they agreed to pay for the repairs themselves.[28] *Id.* ¶¶ 33-34, 73-77, 88-90, 99-104, 120-24, 131-34, 153-54, 159-60, 171, 175-78, 191-93. Put simply, the affirmative

---

[27] The National Highway Transportation and Safety Administration.

[28] The Amended Complaint contains several specific examples of Volkswagen communicating these fraudulent statements to consumers via its authorized dealers. ECF 26 at ¶¶ 67, 74-83, 90, 94, 100-01, 116, 121-26, 131, 140, 154, 160, 171, 177-78, 187, 193.

misrepresentations out of which the Plaintiffs' claims arise are not only the false statements Volkswagen included in its NVLW and in its warranty booklets, but also the false statements it made to both its authorized dealers, who relied on the misrepresentations to deny the Plaintiffs' warranty claims, and to the Plaintiffs.[29] In short, Volkswagen is responsible for the fraudulent statements it made—which it communicated to the Plaintiffs via its authorized dealers—both because its authorized dealers were its agents, *id.* ¶¶ 197, 234, 239-45, and because Volkswagen specifically intended for the Plaintiffs and other CC owners to rely on its misrepresentations. *See, e.g.*, Restatement (Second) of Torts §§ 531, 533; Dobbs, THE LAW OF TORTS § 680 (2nd ed. 2017) ("[T]he maker of a fraudulent representation should be liable not only to those persons he directly addressed or intended to influence, but also to the entire class of persons he intends or has reason to expect will rely upon the representations."); W. Page Keeton, et al., PROSSER & KEATON ON THE LAW OF TORTS § 107, p. 743-45 (5th ed. 1984).[30]

Second, "a promise may be considered fraudulent if, at the time it was made, the promisor had no intention of following through with the promise." *Wilson v. S&L Acquisition Co., L.P.*, 940 F.2d 1429, 1439 (11th Cir. 1991).[31] The Plaintiffs have alleged that Volkswagen never intended to abide by the promises it made in its NVLW—promises to fix defects in the CCs. ECF 26 at ¶¶ 234-35. Given the obvious materiality of a new car warranty, the Plaintiffs' reliance on the NVLW's promise can be inferred from the fact that they agreed to purchase their CCs in the first place. *See, e.g., Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 n.8 (6th Cir. 1988) (inferring reliance from seller's knowledge of a material term and buyer's agreement to enter into the contract).

---

[29] No less significantly, the injuries the Plaintiffs have suffered as a result of Volkswagen's false statements are not only the inflated prices they paid for defective CCs, but also the substantial repair costs they incurred in reliance upon the fraudulent premise that their tire wear was caused, not by the Defect, but by their own erratic driving or faulty tires. *Id.* ¶ 38.

[30] *Accord Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d, 573, 578 (Tex. 2001); *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605 (1995); *Woodward v. Dietrich*, 548 A.2d 301, 309 (Pa. Super. Ct. 1988).

[31] *Accord* Restatement (Second) of Torts § 530, cmt. c; *Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 596 (2001); *Scott Salvage Yard, LLC v. Gifford*, 382 S.W.3d 134, 138 (Mo. Ct. App. 20120); *BTL COM Ltd. v. Vachon*, 628 S.E.2d 690, 696-97 (Ga. Ct. App. 2006); *Wagner Trading Co., Inc. v. Tony Walker Retail Mgmt. Co., Inc.*, 277 A.D. 2d 1012, 1012 (N.Y. App. Div. 2000).

Third, a manufacturer's failure to honor a warranty is either statutorily defined as a deceptive trade practice or else has been judicially interpreted to be a deceptive trade practice in California, Texas, New York, Pennsylvania, and Utah.[32] The California, Texas, New York, Pennsylvania, and Utah Plaintiffs have alleged that Volkswagen failed to honor the NVLW. ECF 26 at ¶¶ 89-91, 99-104, 130-34, 153-54, 191-93. As such, for those Plaintiffs at least, these breach-of-warranty allegations alone are sufficient to satisfy the causation element of their statutory claims.

Finally, reliance is not even an element of the consumer protection statutes of Florida, Missouri, New Jersey, New York, Ohio, and Arizona.[33] For those Plaintiffs, then, the Court can likewise reject Volkswagen's reliance argument out of hand.

### C.    The Louisiana Plaintiff's LUTPA claim is neither untimely nor precluded

Volkswagen's contention that the Louisiana Plaintiff's claim under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA"), La. R.S. §§ 51:1401, *et seq*., is either time-barred or precluded is, for two reasons, misplaced.

First, under Louisiana law, "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damages is abated." *Benton, Benton & Benton v. La. Pub. Facilties Auth.*, 672 So. 2d 720, 723 (La. Ct. App. 1996). Here, Volkswagen has refused to acknowledge or fix the Defect, ECF 26 at ¶ 32; it repeatedly duped the Louisiana Plaintiff into paying for repairs that would not fix the Defect, *id.* ¶¶ 175-78; and the Louisiana Plaintiff's CC continues to suffer from the Defect, *id.* ¶ 179. Accordingly, the one-year prescription period on her Louisiana statutory claim has not yet run.

Second, while Louisiana's Product Liability Act ("LPLA"), La. R.S. §§ 9:2800.52 *et seq*., may be, as Volkswagen argues, the exclusive remedy for any property damage or personal injury

---

[32] *See McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014) (Unfair Competition Law); Tex. Bus. & Com. Code § 17.50(a)(2); *Church & Dwight Co., Inc. v. Huey*, 961 S.W.2d 560, 568-69 (Tex. Ct. App. 1997); *People by Koppell v. Empyre Inground Pools Inc.*, 227 A.D.2d 731, 733 (N.Y. App. Div. 1996); 73 P.S. § 201-2(4)(xiv); Utah Code § 13-11-4(j)(ii).

[33] *See Carriuolo v. General Motors, Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (Florida); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007); *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607, 691 A.2d 350, 366 (1997); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941, 967 N.E.2d 675, 676 (2012); *Guth v. Allied Home Mortg. Capital Corp.*, 2008-Ohio-3386, 2008 WL 2635521, at *3, *7 (Ohio Ct. App. 2008); *Siemer v. Assocs. First Capital Corp.*, No. 97-CV-281-TUCJMRJCC, 2001 WL 35948712, at *3 (D. Az. 2001).

caused by a defective product, it is **_not_** the exclusive remedy for the economic costs of fixing the defective product itself. *See Southwest La. Hosp. Ass'n v. BASF Const. Chems., LLC*, 947 F. Supp. 2d 661, 685 (W.D. La. 2013). Therefore, the Louisiana Plaintiff's LUTPA claim, which is premised only on the loss of her own CC's value and on the costs she expended in attempting to fix her CC, is not precluded by the LPLA. ECF 26 at ¶¶ 174-78, 469. Moreover, no part of the LPLA purports to stand as the exclusive remedy for intentional misrepresentations that cause a consumer to pay for improper repairs that do not actually fix the defect. *Id.* ¶¶ 174-78.

> **D.      The Economic Loss Rule does not bar the Plaintiffs' fraud claims**

Volkswagen mistakenly argues that Florida, Pennsylvania, and Missouri bar common law fraud claims based on economic loss. ECF 34 at 16. This is simply untrue. *See Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1031 (11th Cir. 2017) (Florida law); *Dixon v. Nw. Mut.*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016)[34]; *Web Innovations & Tech. Servs., Inc. v. Bridges to Digital Excellence, Inc.*, 69 F. Supp. 3d 928, 933-34 (E.D. Mo. Nov. 19, 2014).

> **E.      The California Plaintiff's statutory and common law fraud claims are viable**

The California Plaintiff purchased a certified, pre-owned CC with only 8,000 miles on it from a Volkswagen dealer, which, following Volkswagen's directions, never disclosed the Defect to him. ECF 26 at ¶¶ 24-25, 32-33, 128-29. The California Plaintiff repeatedly complained to the dealership about excessive noise emanating from his tires, but, following the script Volkswagen had given it, the dealership failed to disclose the Defect. *Id.* ¶¶ 131-134. Instead, the California Plaintiff was charged $1,000 for a new set of tires, which did not fix the Defect. *Id.* ¶¶ 23, 134.

Volkswagen argues that the California Plaintiff's common law fraud claims—as well as his claims under California's UCL[35] and FAL[36]—fail because, it says, he did not allege that (1) he would have heard the truth about the Defect if Volkswagen had disclosed it, or that (2) he would have acted any differently if he had heard the truth. ECF 34 at 17. But the California Plaintiff identifies precisely the dealerships that repeatedly failed to tell him about the Defect,

---

[34] Volkswagen relies exclusively on outdated and non-binding federal cases that have been repeatedly rejected by the Pennsylvania state courts and which some federal district courts have likewise begun to disavow. *See In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 435 (S.D.N.Y. 2017); *Dixon*, 146 A.3d at 790.
[35] California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*
[36] California's Fair Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

and he specifically alleges that he would not have bought his CC—or, at the very least, he would have paid far less for it—if he had known about the Defect. ECF 26 at ¶¶ 36, 374, 382. That is more than sufficient at this stage of the proceedings. *See, e.g., Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104-05 (9th Cir. 2013) (holding that allegation that plaintiff "would not have purchased goods in question absent th[e] misrepresentation" is "sufficient" to state claims under the UCL and FAL); *Whiteley v. Philip Morris Inc*., 117 Cal. App. 4th 635, 678, (2004) (finding that allegation that, but for misrepresentation, plaintiff would not have purchased product, was sufficient to plead common law fraud in California).

Similarly, Volkswagen's argument that the California Plaintiff's statutory fraud claims under the UCL and FAL should be dismissed because he has adequate remedies at law is premature. ECF 34 at 17. To begin with, plaintiffs may plead claims for relief in the alternative. Fed. R. Civ. P. 8(a)(3). Moreover, Volkswagen has sought dismissal of the California Plaintiff's common law claims—a motion which, if successful, would mean that, in fact, he has no adequate remedy at law. This Court should not dismiss his alternative equitable claims now. *See Botting v. Goldstein*, No. 15-CV-62113, 2015 WL 10324134, at *4 (S.D. Fla. 2015) ("[U]ntil or unless an adequate remedy at law is proved, dismissal of Plaintiffs' claim is premature.").

### F.     The Georgia Plaintiff has stated a Georgia common law fraud claim

The Georgia Plaintiff purchased his CC based on a Volkswagen dealership's false representation that it was free of any defects. ECF 26 at ¶¶ 139-41. As discussed, Volkswagen directed its dealers to make these representations. *See id.* ¶¶ 24-25, 32. Thus, Volkswagen's assertion that the Georgia Plaintiff's common law fraud claim should be dismissed because it had "no relationship" with—and, therefore, no duty to—him, ECF 34 at 18, should be rejected. *See, e.g., Squish La Fish, Inc. v. Thomco Specialty Prods., Inc.*, 149 F.3d 1288, 1291-92 (11th Cir. 1998) (applying Georgia law).[37]

### G.     The Ohio and Utah Plaintiffs' statutory claims may proceed on a classwide basis

Volkswagen asks this Court to find that the Ohio and Utah Plaintiffs' statutory claims cannot proceed on a class basis because, it says, they have not met certain state-imposed requirements for the maintenance of a class action. ECF 34 at 18-19. This argument should not detain this Court long. To begin with, the law in this Circuit is clear that state-imposed

---

[37] The Georgia Plaintiff does not contest Volkswagen's motion to dismiss his claim under Georgia's Uniform Deceptive Trade Practices Act (Count 11).

requirements for the maintenance of a class action simply do not apply in federal court. *See Lisk v. Lumber One Wood Pres., LLC*, 792 F.3d 1331, 1334-38 (11th Cir. 2015).[38] No less significantly, the Ohio and Utah Plaintiffs have alleged that Volkswagen (1) knew about the Defect but nevertheless failed to disclose it, ECF 26 at ¶¶ 24-33, 196-225; (2) lied about the true cause of the improper and accelerated tire wear the Plaintiffs were experiencing and instructed its dealers to do the same, *id.* ¶¶ 24-26, 121-24, 193; and (3) violated its NVLW by failing to fix the Defect, *id.* ¶¶ 121-24, 192-93. Volkswagen had "notice" that each of these actions violated the relevant consumer protection statutes.[39]

### H.      The Florida and Ohio Plaintiffs' consumer protection claims are timely

The Florida and Ohio Plaintiffs purchased new CCs from Volkswagen dealers in 2011. ECF 26 at ¶¶ 60, 118. Both complained repeatedly—and within the relevant statute of limitations—to their dealers about excessive noise and premature tire wear. *Id.* ¶¶ 64, 121, 123. But, following Volkswagen's instructions, those dealers lied to the Plaintiffs about the true cause of the improper and accelerated tire wear they were experiencing. *Id.* ¶¶ 60-67, 121-26. Because Volkswagen's fraudulent concealment of the Defect tolled the statute of limitations for both Plaintiffs, their statutory claims are timely. *See, e.g., In re Takata Airbag Prods. Liab. Litig.*, 193 F. Supp. 3d 1324, 1346 (S.D. Fla. 2016); *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002).[40]

### <u>Conclusion</u>

For the foregoing reasons, the Plaintiffs respectfully submit that, except as to Counts 11 and 20, this Court should deny Volkswagen's motion to dismiss.

---

[38] Volkswagen's argument on this point relies exclusively on cases that directly conflict with the Eleventh Circuit's binding opinion in *Lisk*. *See* ECF 34 at 18-19.

[39] *See* Ohio Rev. Code § 1345.02(B)(1); Utah Admin. Code § 152-11-3(B)(5); *Keel v. Toledo Harley-Davidson/Buell*, 920 N.E.2d 1041, 1044-46 (Ohio Ct. App. 2009) (holding that it was a deceptive practice to tell buyer that a vehicle is free of defects when it was not); Utah Code § 13-11-4(j)(ii) (deceptive trade practice to "fail[] to honor a warranty or a particular warranty term"); *id.* §§ 13-11-4(2)(a), 13-11-4(2)(b); *State ex rel. Div. of Consumer Prot. v. GAF Corp.*, 760 P.2d 310, 313 (Utah 1988) (misstatements about quality of goods sold violates the Act).

[40] The North Carolina Plaintiff does not contest Volkswagen's motion to dismiss his NCUDTPA claim (Count 20). *See* ECF 34 at 19-20.

Dated: February 26, 2018                     Respectfully Submitted,

                                             **PODHURST ORSECK, P.A.**
                                             */s/ Roy K. Altman*
                                             Roy K. Altman
                                             Bar No.: 116885
                                             raltman@podhurst.com
                                             One SE 3rd Avenue, Suite 2300
                                             Miami, Florida 33131
                                             Phone: (305) 358-2800
                                             Fax: (305) 358-2382


                                             **KREHER & TRAPANI, LLP**
                                             */s/ Francesco P. Trapani*
                                             Francesco P. Trapani, Esq.
                                             frank@krehertrapani.com
                                             1325 Spruce St.
                                             Philadelphia, PA 19107
                                             Phone: (215) 907-7290
                                             Fax: (215) 907-7287
                                             *Pro Hac Vice* pending


                                             **POGUST BRASLOW & MILLROOD, LLC**
                                             */s/ Harris Pogust*
                                             Harris Pogust, Esq.
                                             HPogust@pbmattorneys.com
                                             Eight Tower Bridge, Suite 940
                                             161 Washington Street
                                             Conshohocken, PA 19428
                                             Phone: (610) 941-4204
                                             Fax: (610) 941-4245
                                             *Pro Hac Vice* pending

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 26, 2018, I caused the foregoing document to be served by electronic mail on all Counsel of record for all Defendants as set forth on the attached Service List.

PODHURST ORSECK, P.A.
One S.E. Third Avenue
Suite 2300
Miami, Florida 33131
Tel: 305-358-2800

By: <u>/s/  Roy K. Altman</u>
        Roy K. Altman, Esquire
        Florida Bar No. 116885
        raltman@podhurst.com

22

<u>**SERVICE LIST**</u>
US District Court, Southern District of Florida
Case No. 17-cv-23033-SCOLA-TORRES
*Lila Wilson, et al. v. Volkswagen Group of America, Inc.*

**KENNY NACHWALTER, P.A.**
Stanley H. Wakshlag
E-mail: shw@knpa.com
1441 Brickell Avenue, Suite 1100
Miami, FL 33131

**HERZFELD & RUBIN, P.C.**
Jeffrey L. Chase (*pro hac vice*)
jchase@herzfeld-rubin.com
Michael B. Gallub  (*pro hac vice*)
mgallub@herzfeld-rubin.com
Homer B. Ramsey (*pro hac vice*)
hramsey@herzfeld-rubin.com
125 Broad Street
New York, NY 10004