United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Lila Wilson and others, Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-23033-Civ-Scola |
| | ) | |
| Volkswagen Group of America, Inc. | ) | |
| and Volkswagen AG, Defendants. | ) | |

## Order on Motion to Dismiss

The Plaintiffs in this case are fifteen individuals from fourteen different states who claim to own or lease 2010 to 2015 Volkswagen CC model cars. They assert, both individually and on behalf of a putative nationwide class and multiple state subclasses, against Defendants Volkswagen Group of America, Inc. and Volkswagen AG (collectively "VW"), that their cars suffer from suspension-system defects. These defects prevent certain adjustments to their cars' alignments which in turn result in persistent premature wear and degradation of their cars' tires. Based on the defect, the Plaintiffs, or a subset thereof, have set forth twenty-nine counts against VW: the nationwide class asserts claims for violations of the Magnuson-Moss Warranty Act, common-law fraud, common-law breach of express and implied warranty; and on behalf of the state subclasses, the Plaintiffs also assert claims for the violation of various state consumer-protection, product-liability, advertising, warranty, and deceptive-and-unfair-trade-practice statutes. Of the Plaintiffs' twenty-nine claims, VW argues that twenty-one should be dismissed for a variety reasons, including: not meeting the heightened pleading standard required for fraud claims; failure to plead VW's knowledge of the defect; failure to properly allege the Plaintiffs' reliance on or awareness of VW's misrepresentations; expiration of the warranty period; failure to properly allege defects in materials or workmanship; failure to provide pre-suit notice; expiration of various statutes of limitations; and the economic loss rule. (Def. Volkswagen Group of America's Mot. to Dismiss, **ECF No. 34** (the "Jt. Mot.").)[1] For the following reasons, the Court **grants** VW's motion **in part and denies** it **in part**.

---

[1] Defendant Volkswagen AG joined Defendant Volkswagen Group of America's motion in addition to filing its own motion, which the Court maintains under advisement. (Def. Volkswagen AG's Mot. to Dismiss, ECF No. 49, 1.)

## 1. Background[2]

The fifteen named Plaintiffs in this case are individuals from fourteen different states, who bought or leased VW CC model cars beginning in 2011 through 2016.[3] The model years span from 2010 through 2015. The suspension components of each of these cars, and apparently all CC models purchased since 2009 (ECF No. 26, Am. Compl. at ¶ 5–6), are, according to the Plaintiffs, defective (*id.* at ¶ 19). Because of this defect, technicians are unable to properly adjust the cars' front and rear camber—the angle at which each tire slants away from the vertical axis while being viewed from the front or back of the vehicle. (*Id.* at ¶¶ 13, 19.) Ordinarily, all cars' tires will eventually deviate from their manufacturer's alignment specifications—either as soon as they roll off the assembly line or through normal use. (*Id.* at ¶ 20.) However, because of the CC's suspension-component defects, these cars' misaligned cambers simply cannot be corrected. (*Id.* at ¶ 21.) As a result of this irreversible misalignment, the CC models inevitably develop improper and accelerated tire wear. (*Id.* at ¶ 22.) When these tires are replaced, the new tires suffer the same fate. (*Id.* at ¶ 23.)

VW has instructed its dealers to cover up the problem by telling owners and lessees that the tire wear is the result of, variously, erratic driving or faulty tires. (*Id.* at ¶ 24.) Per VW's instructions, the dealers tell the drivers that the only solution is to repeatedly replace the prematurely worn tires. (*Id.*) The Plaintiffs say the defects could be fixed by replacing the defective control-arm assemblies with different, aftermarket assemblies that allow for camber adjustments, but VW refuses to offer this as a solution. (*Id.* at ¶ 27–29.) The Plaintiffs surmise that VW refuses to authorize or publicize this solution because (1) it does not want to acknowledge the defect; and (2) VW's express warranty would require it to pay for the cost to replace defective parts and workmanship. (*Id.* at ¶ 29–31.) On the other hand, the warranty does not cover tire repairs or replacement. (*Id.* at ¶ 31.) As a result, the Plaintiffs, and other purchasers and lessees, have had to pay extra for tire replacements, suffered a

---

[2] This background is based on the Plaintiffs' complaint allegations, which the Court accepts as true and construes in the light most favorable to the Plaintiffs per Federal Rule of Civil Procedure 12(b)(6).

[3] The Plaintiffs and the states from which they hail are as follow: Lila Wilson (Florida); Matthew Martino (New Jersey); Thomas Wilson & Jorge Cruz (Texas); Teresa Garella (Pennsylvania); Mary Blue (Missouri); Ryan Brown (North Carolina); Nick Panopoulos (Ohio); Brian Maytum (California); Leigh Glasband (Georgia); Carissa Macchione (New York); Sydnee Johnson (Virginia); Debbie Gray (Louisiana); Lorne Spelrem (Arizona); and Israel Orrantia (Utah).

diminution in the value of their cars, and did not receive the benefit of their bargains. (*Id.* at ¶¶ 38, 59.)

VW has known about, or should have known about, the defective suspension components since at least 2010 but has actively concealed and failed to disclose the defect to the Plaintiffs or any other purchasers or lessees. (*Id.* at ¶ 33.) Beginning in at least 2010, thousands of CC drivers have complained to dealers about improper and accelerated tire wear. (*Id.* at ¶¶ 200–201). Through its close supervision of its dealerships, VW itself learned of these complaints almost immediately. (*Id.* at ¶ 203.) Further, by at least August 2013, VW customers were filing complaints with the National Highway Transportation Safety Administration ("NHTSA") about the problems with the improper and accelerated tire wear. (*Id.* at ¶ 220.) VW monitors the NHTSA's database and reviews complaints about its cars. (*Id.* at ¶ 219.) Additionally, complaints about the CC model's tires began appearing on online message boards and forums devoted to VWs in July 2011. (*Id.* at ¶ 223.) VW monitors these postings as well. (*Id.* at ¶ 222.)

VW made material misstatements and omissions to CC buyers through their owner's manuals, warranty booklets, new vehicle limited warranties, and dealerships. VW, itself and through its dealerships, also refused to acknowledge the suspension defect and declined to fix any of the CCs. Instead, CC drivers had to continually incur the expenses of having to maintain, repair, and replace their prematurely worn and degraded tires. Their cars' values are also diminished. Through their complaint, the Plaintiffs seek damages under a number of theories: violations of the Magnuson-Moss Warranty Act; common law and state law claims of fraud and breach of implied and express warranties; and then dozens of claims under various state statutes.

## 2. **Legal Standard**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

### 3. Express-Warranty Claims

In its motion to dismiss, VW argues that the Plaintiffs' express-warranty claims must be dismissed for a variety of reasons.

## A. Warranty Limitation Allegations

To begin with, the Court agrees with VW that the amended complaint does not allege express warranty claims with respect to Plaintiffs Blue (Missouri), Brown (North Carolina), Spelrem (Arizona), and Glasband (Georgia). By its terms, the amended complaint alleges a breach of the express warranty "only on behalf of those Plaintiffs and other Class Members who returned their Class Vehicles for service at an authorized [VW] dealership within the warranty period." (Am. Compl. at ¶ 328.) As set forth by VW, and left unrebutted by the Plaintiffs, none of these four Plaintiffs alleges they sought tire repairs or replacement within the applicable 3-year/36,000 mile warranty period. (Jt. Mot. at 3 n. 4.) Thus, the Court grants VW's motion to dismiss the express warranty claims with respect to these four Plaintiffs.

## B. Notice

VW also submits that Glasband (Georgia), Blue (Missouri), and T. Wilson & Cruz's (Texas) express warranty claims must be dismissed because they either do not allege providing notice or their notice attempt failed. Because Glasband (Georgia) and Blue (Missouri) have failed to allege their express warranty claims, as set forth above, the Court will not evaluate whether they also failed to comply with their state's express warranty notice requirements. With respect to T. Wilson and Cruz, however, the Court disagrees with VW. As set forth by the Plaintiffs, under Texas law, a buyer need only communicate "[a] general expression of [his] dissatisfaction" with the product in order to comply with Texas's notice requirement. *Lochinvar Corp. v. Meyers*, 930 S.W.2d 182, 190 (Tex. App. 1996). Both Plaintiffs allege notifying authorized VW dealers, as directed to by VW, of their complaints about their tires. (Am. Compl. at ¶¶ 89–90; 171–72.) The complaint also alleges that the dealers then forwarded this information directly to VW. (*Id.* at ¶¶ 209– 12.) This satisfies the requirement, as identified by VW, that a buyer provide notice of his dissatisfaction to a remote manufacturer.

## C. Louisiana Express Warranty Claims

The Court agrees with VW that Gray's (Louisiana) express-warranty claim should be dismissed. Under Louisiana law, a claim for breach of express warranty is subsumed within the Louisiana Product Liability Act and is not viable as an independent theory of recovery against a manufacturer. *Touro Infirmary v. Sizeler Architects*, 947 So. 2d 740, 744, 2004-2210 (La. App. 4 Cir. 11/21/06) ("Courts have consistently held the LPLA subsumes all possible causes of action, with the exception of a claim in redhibition. Hence, the breach

of express warranty is encompassed by the LPLA and is no longer viable as an independent theory of recovery against a manufacturer.") The Plaintiffs do not appear to disagree. The Court thus dismisses Gray's express-warranty claim.

### D. Design Versus Material-and-Workmanship Defects

Next, VW argues that the New Vehicle Limited Warranties (the "NVLW") that apply to the Plaintiffs' car do not cover design defects and therefore do not cover the defects the Plaintiffs allege. According to VW, the Plaintiffs allege only design defects and not defects in material and workmanship (which are covered by the NVLW). In support of its contention, VW cites three paragraphs from the Plaintiffs' 738-paragraph-long complaint. In one paragraph the Plaintiffs allege, "Properly designed and functioning suspension components should allow a technician to adjust the vehicle's camber in the event that it deviates from the manufacturer's alignment specifications, either because of normal use or because it came off the assembly line misaligned." (Am. Compl. at ¶ 18.) In another paragraph the Plaintiffs allege, within their Magnuson-Moss Warranty Act count, "[w]ithout limitation, the Class Vehicles share a common design defect." (*Id.* at ¶ 287.) And finally, in the third paragraph, the Plaintiffs, in their fraud count, refer to "the Defect that exists because of, among other things, improperly designed and installed suspension components in the Class Vehicles." (*Id.* at ¶ 304.) These three paragraphs alone are a slender reed and "do[] not foreclose the possibility that th[e alleged defect] is caused by some sort of persistent manufacturing defect." *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at *7 (M.D. Tenn. Aug. 16, 2010). At this stage of the case, this Court must not only accept all of the Plaintiffs' allegations as true, but must also construe those allegations in the light most favorable to them. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). As the Plaintiffs have pointed out, they have alleged entitlement, under the express warranty, to compensation "for the replacement of defective parts and workmanship." (Am. Compl. at ¶ 31.) It is entirely possible that a manufacturing irregularity permeated the production of all CCs during the timeframe outlined in the complaint. The Court thus denies VW's motion to dismiss the express warranty claim on this ground.[4]

---

[4] In a footnote, VW asks the Court to at least dismiss the express warranty claim "insofar as it is based on a design defect." (Jt. Mot. at 4 n. 5.) The Court denies the request. If the Plaintiffs ultimately establish a materials or workmanship defect, rather than a design defect, the Court need not ever address whether the warranty extends to a design defect. If they do not, the Court will take up the issue at that time.

## E. Time Bar

Finally, VW submits that Panopoulos (Ohio), T. Wilson (Texas), Spelrem (Arizona), and Johnson's (Virginia) express-warranty claims should all be dismissed because their states all impose a four-year statute of limitations on breach of warranty claims, running from the date of delivery, with no discovery rule (except where a warranty explicitly extends to future performance). (Jt. Mot. at 5.) Accordingly, says VW, since all four of these Plaintiffs bought their cars more than four years before filing their complaint, their claims are time barred. (*Id.*) Because Spelrem (Arizona) failed to properly allege his express-warranty claim, as set forth above, the Court will not evaluate whether his claim is also barred by Arizona's statute of limitations.

The parties agree that even where a claim is filed beyond the four-year mark, affirmative and active concealment, preventing a plaintiff from timely bringing suit, can toll these states' limitations periods. Effectively pleading such concealment is subject to Federal Rules of Civil Procedure 9(b)'s requirement that "the circumstances constituting fraud shall be stated with particularity." *Speier-Roche v. Volkswagen Grp. of Am. Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (Moreno, J.) (quotation omitted). That is, "the circumstances of the fraud must be alleged with specificity, *i.e.* the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quotation omitted). Further, allegations of "inaction and nondisclosure are wholly insufficient to supply the affirmative steps taken to prevent [the] Plaintiffs from discovering the basis of their claims that would be necessary before tolling based on fraudulent concealment becomes appropriate." *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *6 (S.D. Fla. Dec. 5, 2013) (Cohn, J.) "The 'fraudulent means' alleged must go beyond nondisclosure, and constitute active and willful concealment." *Id.* (citing *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1282 n.1 (11th Cir. 2003)).

VW maintains that the Plaintiffs' allegations do not sufficiently plead fraudulent concealment or estoppel with the required Rule 9(b) specificity. In opposition, the Plaintiffs insist that their complaint "meticulously avers that [VW] affirmatively and actively concealed the [d]effect." (Pls.' Resp. at 13.) According to the Plaintiffs, they adequately pleaded that VW "(1) intentionally put misleading statements in the Owner's Manual and in the NVLW; (2) knowingly misled the Plaintiffs into believing that their [tire complaints had] nothing to do with the [d]effect; and (3) directed its authorized dealerships to lie to the Plaintiffs about the causes of the premature tire wear . . . ." (*Id.*) In support, the Plaintiffs cite to a number of paragraphs in their complaint. These paragraphs set forth, variously: general and conclusory allegations related to

VW's attempt to cover up the defect (Am. Compl. at ¶¶ 24–25, 32–34, 225, 253, 256); allegations relating to VW's awareness and knowledge of the defect (*id*. at ¶¶ 33, 224, 253); allegations that specific dealerships in New Jersey, Texas, Ohio, Virginia, Louisiana, and Arizona reported their customers' complaints to VW and that VW, in response, at some point, told the dealerships there was no defect and that they should so inform their customers (*id*. at ¶¶ 86, 95, 127, 163, 180, 188); allegations that VW failed to disclose the defect to the Plaintiffs (*id*. at ¶ 224); and statements VW made in its owner's manuals, warranty booklets, and new vehicle limited warranties (*id*. at ¶¶ 227–37).

These allegations, however, do not satisfy the particularity requirements of Rule 9(b) with respect to the Plaintiffs' tolling argument. That is, these facts do not adequately plead the "who, what, when, where, and how" of the alleged fraudulent concealment of the cause of action itself or the estoppel necessary to support tolling. Further, the statements the Plaintiffs point to that VW made in its owner's manuals, warranty booklet, and new vehicle limited warranties do not establish active fraudulent concealment. At most these statements could be construed either as VW's failure to disclose the defect or part of a broader scheme that ultimately played into VW's alleged attempt to conceal the defect. But, standing alone, these statements do not themselves sufficiently allege active concealment of the defect. Nor do the mostly anonymous online complaints the Plaintiffs cite to sufficiently allege VW's fraudulent concealment. (Pls.' Resp. at 12 n. 20.) None of the online complaints themselves are presented as actual allegations. Instead, the Plaintiffs rely on them for the purpose of pleading VW's knowledge of the defect. Even when reading the complaint in the light most favorable to the Plaintiffs, the Court simply cannot construe these online complaints, unassociated with any of the Plaintiffs in this case, as properly pleading the fraudulent concealment or estoppel required for tolling the statute of limitations for an express-warranty claim. As a result, the Court grants VW's motion to dismiss with respect to Plaintiffs Panopoulos, T. Wilson, and Johnson's express-warranty claims.

### 4. Implied Warranty

### A. Warranty Limitations

VW seeks dismissal of a number of the implied warranty claims presented by some of the Plaintiffs. In particular, VW contends that Plaintiffs Blue (Missouri), Brown (North Carolina), Glasband (Georgia), and Spelrem's (Arizona) implied warranty claims should be dismissed because none of them allege they sought repairs, or even that their tires were prematurely worn, within the applicable 3-year or 36,000 warranty period. Further, explains VW,

both Brown and Glasband purchased their cars used, long after the warranty periods expired. The Plaintiffs counter that they have pleaded facts alleging that the warranty limitations are unconscionable and therefore unenforceable.

In Missouri, North Carolina, and Georgia, a contract clause is unconscionable only if it is both procedurally and substantively unconscionable. In Arizona, unconscionability can be either procedural or substantive. In support of their contention that they have properly pleaded unconscionability, the Plaintiffs point to the following complaint allegations: (1) "Any efforts to limit th[e] warranty in a manner that would exclude coverage of the Class Vehicles is unconscionable . . . ." (Am. Compl. at ¶ 247); (2) the warranty limitation is procedurally unconscionable because "[t]here was unequal bargaining power between [VW] . . . and the Plaintiffs" (*id.* at ¶ 248); and (3) the warranty limitation is substantively unconscionable because "[VW] knew that the Class Vehicles were defective and would continue to pose safety risks after the warranties purportedly expired[;] failed to disclose the [d]efect[;] and . . . actively concealed the existence of the [d]efect and prevented the Plaintiffs . . . from discovering it" (*id.* at ¶ 249).

The Court agrees that "broad allegations of procedural unconscionability, stating simply that there was unequal bargaining power and there was lack of meaningful choice relating to the limitations on the warranties are insufficient to survive a motion to dismiss." *In re Takata Airbag Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 138976, *170 (S.D. Fla. Sep. 29, 2016) (Moreno, J.) (alterations omitted) (quoting *Marchante v. Sony Corp. of Am., Inc.*, 801 F. Supp. 2d 1013, 1022 (S.D. Cal. 2011). Because the Plaintiffs do not point to anything other than their allegation of unequal bargaining power between the parties, they have failed show that they have properly pleaded procedural unconscionability. Thus, the Court grants VW's motion to dismiss with respect to Blue, Brown, and Glasband's implied warranty claims pleaded under count three as well as Blue's implied warranty claim under Missouri statutes set forth in count fifteen.

The Plaintiffs' allegations regarding substantive unconscionability, however, are sufficient to get Arizona Plaintiff Spelrem past the pleading stage. The parties appear to agree that a contract is substantively unconscionable only if its terms are so unfair "as to be overly oppressive or unduly harsh to one of the parties." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 263 (5th Cir. 2014). As set forth by the Plaintiffs, they have alleged that (1) VW knew about the defect; (2) the Plaintiffs lacked notice of the defect or an opportunity to discover it prior to the sale; (3) VW knew that the Plaintiffs would have to cover the costs springing from the defect; and (4) VW knew the defect would render the cars unsafe. The Court finds that the Plaintiffs have, as

set forth above, alleged enough to meet the substantively unconscionable standard. Thus, the Court denies VW's motion to dismiss the implied warranty claim, under count three, against Spelrem.

## B. Privity

Next, VW argues that Plaintiffs Glasband (Georgia), Brown (North Carolina), and Panopoulos' (Ohio) implied warranty claims fail for lack privity with VW. Because the Court has already dismissed Glasband and Brown's implied warranty claims as set forth above, it will only consider the parties' arguments with respect to Ohio Plaintiff Panopoulos.

As pointed out by VW, "[i]n Ohio, damages are recoverable for breach of implied warranties only if there is privity of contract between the parties." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St. 3d 266, 271 (Ohio 2007). Vertical privity exists, in Ohio, "only between immediate links in the distribution chain." *Id.* at 273. The Plaintiffs maintain that "privity will lie between a manufacturer and an ultimate consumer if either the manufacturer is so involved in the sales transaction that the distributor merely becomes the manufacturer's agent or if the consumer is an intended third-party beneficiary to a contract." (Pls.' Resp. at 7 (quoting *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 628 (Ohio App. 3d Dist. 2003).)

To begin with, the Court disagrees with the Plaintiffs' contention that Panaopoulos can satisfy Ohio's privity requirement by alleging he is a third-party beneficiary. Federal district courts sitting in Ohio, interpreting Ohio law have rejected a third-party-beneficiary exception to Ohio's privity requirements. *See, e.g., Traxler v. PPG Industries, Inc.*, 158 F. Supp. 3d 607, 625 (N.D. Ohio 2016); *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 758 (N.D. Ohio 2010) (referring to the Ohio Supreme Court's "unequivocal language" in declining to apply a third-party-beneficiary exception to an implied-warranty claim). The Court finds these cases persuasive and declines to apply the third-party beneficiary exception to Panopoulos's implied-warranty claim.

On the other hand, the Court finds the Plaintiffs have sufficiently alleged that the duty of the VW dealership that Panopoulos purchased his car from was "to act primarily for the benefit of the one delivering the goods to [it]" rather than "act[ing] primarily for [its] own benefit." *Traxler*, 158 F. Supp. 3d at 622 (citing *Curl*, 871 N.E.2d at 1148.) The Plaintiffs point to factual allegations in their complaint detailing support for their contention: VW "has instructed its dealers to cover up the [suspension] problem" (Am. Compl. at ¶¶ 24, 32); VW requires owners to take their cars to authorized [VW] dealerships for any warranty work (*id.* at ¶ 197); VW closely supervises its dealerships (*id.* at ¶ 203); any repair on a VW car conducted at a VW dealership is entered into a

database that is maintained and accessible to VW (*id.* at ¶ 209); "[VW] acts through numerous authorized dealers who act, and represent themselves to the public, as exclusive VW representatives and agents" (*id.* at ¶ 239); "[VW], through its authorized dealerships, issued its warranties in the NVLW to the Plaintiffs and other Class Members as part of the sale of the Class Vehicles" (*id.* at ¶ 240); "[VW] exercises and maintains the right to exercise day-to-day control over the activities of its authorized dealers" (*id.* at ¶ 245). Indeed, the Plaintiffs have alleged enough to show that VW "is so involved in the sales transaction that the distributor merely becomes the manufacturer's agent." *Norcold, Inc.*, 798 N.E.2d at 628. Thus the Court denies VW's motion to dismiss Panopoulos's implied-warranty claim because of a lack of privity.

## C. Notice

Next, VW submits that Plaintiffs Glasband (Georgia), Blue (Missouri), and T. Wilson and Cruz's (Texas) claims for breach of implied warranty should also be dismissed for failing to provide pre-suit notice to VW. VW relies on the reasoning it presented to support its notice argument regarding these Plaintiffs' express-warranty claims. Because the Court already concluded the Texas Plaintiffs' notice was sufficient regarding their express-warranty claims, it also finds their notice sufficient regarding their implied-warranty claims. The Court declines to evaluate the notice issue with respect to Glasband and Blue, however, because their implied-warranty claims have already been dismissed as set forth above.

## D. Statute of Limitations

VW contends that Plaintiffs Martino (New Jersey), Panopoulos (Ohio), T. Wilson (Texas), Spelrem (Arizona), Johnson (Virginia), and Gray's (Louisiana) implied-warranty claims should be dismissed as time barred based on their respective states' statutes of limitations.

With respect to Plaintiffs Martino, Panopoulos, T. Wilson, Spelrem, and Johnson, the parties appear to agree that the applicable statute of limitations for an implied-warranty claim, accruing at the time of sale, is four years. (Jt. Mot. at 10 (citing the relevant statutory provisions from New Jersey, Ohio, Texas, Virginia, and Arizona).) However, like they did in response to VW's contention that Plaintiffs Panopoulos, T. Wilson, Spelrem, and Johnson's express warranty claims are time barred, the Plaintiffs again rely on their allegations of fraudulent concealment to toll the limitations period. For the same reasons that argument failed to convince with respect to the Plaintiffs' express-warranty claims, it fails to convince with respect to the Plaintiffs'

implied-warranty claims. The Court thus grants VW's motion to dismiss, as time barred, as to Plaintiffs Martino, Panopoulos, T. Wilson, Spelrem (Arizona), and Johnson's (Virginia) implied-warranty claims under count three as well as Martino, T. Wilson, and Johnson's state statute implied-warranty claims set forth in, respectively, counts sixteen, twenty-five, and twenty-nine.

VW's motion with respect to Plaintiff Gray (Louisiana), however, is denied. VW submits that Gray's implied-warranty claim should be dismissed because the time limit for filing an action in redhibition against a seller who was *not aware of the existence of a defect* is four years from the day of delivery or one year from the buyer's discovery of the defect, whichever comes first. (Jt. Mot. at 10 (quoting La. Civ. Code art. 2534A.(1)).) According to VW, because Gray bought her car in 2012 and didn't file suit until November 2017 (her claims were added through the amended complaint), her claim is time barred. In opposition, the Plaintiffs point out that VW's reliance on this provision is misplaced because the complaint alleges that VW was, in fact, aware of the defect. In contrast to 2534A, provision 2534B provides that an "action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer." La. Civ. Code art. 2534B. Gray has submitted an unrebutted affidavit declaring that she did not discover the defect until December 2016. Because VW has not rebutted the Plaintiffs' argument or factual presentation, it has failed to convince the Court that Gray's implied-warranty or redhibition claim is time barred.

### 5. Fraud Claims

Finally, for a variety of reasons, VW argues that many of the Plaintiffs' claims that involve allegations of fraud should be dismissed. To begin with the Court disregards VW general contention that all of the Plaintiffs' fraud claims should be dismissed for their failure to meet the heightened particularity standard of Rule 9(b). VW does not specify which aspects of the Plaintiffs' fraud claims are deficient. Without any direction, the Court declines to dismiss any of the Plaintiffs' claims on this overly generalized basis.[5]

---

[5] VW also contends that the Plaintiffs have impermissibly lumped both Defendants together, in violation of Rule 8's pleading standards. The Court does not find this fatal, however, to the Plaintiffs' complaint. Instead, the Court finds "[t]he complaint can be fairly read to aver that [both] defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000). This case is distinguishable from that cited by VW where five defendants were lumped together, three of whom were individuals and two of which were corporations and it was impossible to tell which defendants were responsible for which acts. *Lane v. Capital Acquisitions and Mgt. Co.*,

## A. Misrepresentation claims

VW's argument regarding affirmative misrepresentation is similarly generalized and presented in somewhat piecemeal fashion. VW urges the Court to dismiss all of the "Plaintiffs' fraud claims that are based on affirmative misrepresentations." (Jt. Mot. at 12.) Which particular counts or which Plaintiffs does this apply to? VW doesn't say. The Plaintiffs' common-law claims of fraud allege fraudulent concealment and fraudulent inducement. In support of these claims, the Plaintiffs maintain that VW "concealed, suppressed, and/or misrepresented material facts regarding the [d]efect." (*E.g.*, Am. Compl. at ¶ 301.) The Plaintiffs further contend that they relied on these concealed, suppressed, and/or misrepresented facts in "purchasing, leasing or retaining" their cars. (*E.g.*, Am. Compl. at ¶ 306.) VW complains that the "Plaintiffs' **only** allegations asserting affirmative misrepresentations by [VW] involve statements printed in the owner's manuals and warranty booklets given to purchasers of CC vehicles." (Jt. Mot. at 12 (emphasis in original).) To begin with, these are not the only affirmative-misrepresentation allegations set forth in the complaint—instead the Plaintiffs have alleged a number of other false statements they contend were made, after acquiring their cars, in response to their complaints about their tires' premature wear. Further, the Plaintiffs' common law fraud claims are not premised solely on damages resulting from their purchase of the cars, but for retaining them as well. Similarly, the Plaintiffs' fraud claims are also based on VW's concealing and suppressing facts. Thus, VW's argument that the Plaintiffs' claims must be dismissed because they have not alleged reliance on any particular misrepresentation prior to buying their cars misses the mark.

Moreover it appears that VW does not intend its argument regarding affirmative misrepresentation to dispense with the entirety of any particular claim but instead presses the Court to preclude the Plaintiffs from pursuing their claims in only one limited regard—presumably limiting the theories under which the Plaintiffs might pursue their various fraud claims but not foreclosing

---

04-60602 CIV, 2006 WL 4590705, at *5 (S.D. Fla. Apr. 14, 2006) (Marra, J.), *aff'd sub nom. Lane v. XYZ Venture Partners, L.L.C.*, 322 Fed. App'x 675 (11th Cir. 2009). Here, the Court interprets the Plaintiffs' allegations against both Defendants to mean that the Plaintiff has a good faith belief to allege that both Defendants were equally and coextensively responsible for the alleged conduct. Furthermore, although VW didn't raise this issue under Rule 9(b), the Court nonetheless notes that "Rule 9(b)'s heightened pleading standard may be applied less stringently . . . when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *Hill*, 2003 WL 22019936, at *3 (quotations and alterations omitted).

any one claim altogether. VW is not so much asking the Court to dismiss some of the Plaintiffs' claims, but instead is inviting the Court to opine on the suitability of evidence it anticipates the Plaintiffs might try to present in order to prove their claims. While VW may be correct that a plaintiff cannot establish reliance on an affirmative misrepresentation in making a purchase when he or she was unaware of the misrepresentation, divorced from specified claims, the exercise does not seem appropriate in the context of a motion to dismiss. The Court declines to dismiss any claims on this basis.

## B. VW's knowledge of the defect

VW next argues that all of the Plaintiffs' common-law fraudulent-concealment and twelve of the state statutory consumer-fraud claims should be dismissed because the Plaintiffs have failed to adequately plead that VW knew of the defect at the time each Plaintiff acquired his or her car. The parties appear to agree that in order to establish that VW was aware of the defect, the Plaintiffs must allege sufficient facts establishing its knowledge prior to each Plaintiff's acquiring his or her car. (Jt. Mot. at 13–14; Pls.' Resp. at 14). There also appears to be no dispute that "allegations of knowledge and intent are not subject to the particularity requirement" under Rule 9(b). *Cordell Consultant, Inc. Money Purchase Plan & Tr. v. Abbott*, 561 F. App'x 882, 884 (11th Cir. 2014). Instead, VW complains the Plaintiffs' allegations, even if accepted as true and drawing all reasonable inferences in their favor, fall short of establishing VW's knowledge of the defect prior to each Plaintiff's acquisition.

To begin with, VW's contention that the Plaintiffs' allegations "upon information and belief" are impermissibly speculative in the context of fraud allegations is not categorically true. That is, "[w]hile 'pleadings generally cannot be based on information and belief,' the 11th Circuit has stated that 'Rule 9(b)'s heightened pleading standard may be applied less stringently when specific factual information about the fraud is peculiarly within the defendant's knowledge or control.'" *U.S. ex rel. Sanchez v. Abuabara*, No. 10-61673-CIV, 2012 WL 254764, at *10 (S.D. Fla. Jan. 27, 2012) (Huck, J.) (quoting *US ex rel. Hill v. Morehouse Med. Assocs., Inc.,* 2003 WL 22019936 *3 (11th Cir. Aug.15, 2003) (alterations omitted). VW does not dispute that whether or not it was aware of the defect is peculiarly within its own knowledge or control. VW's complaint in this regard, then, is unavailing.

In any event, the Plaintiffs rely, in part, on a number of customer tire complaints submitted to NHTSA and posted to online message boards to establish VW's knowledge. One of VW's quarrels with these complaints is their timing. In this regard, VW points to the earliest submission to NHTSA, presented in the complaint, that is dated August 15, 2013. VW protests that

this postdates the purchase of seven of the Plaintiffs' cars. But the NHTSA posts are not the only complaints Plaintiffs rely on. Instead, the Plaintiffs also list complaints on other online forums, beginning on July 4, 2011, with a message pointedly contending that the driver's CC tires are improperly and prematurely wearing as the result of a defect with the car's design. (Am. Compl. at ¶ 223.a.) Further, throughout its complaint, the Plaintiffs repeatedly maintain that VW was aware of the defect since at least 2010. (*Id.* at ¶¶ 33, 200–02, 208, 211, 224, 253, 300, 337, 347.) This predates the acquisition of each Plaintiff's car. Thus, VW's arguments that the Plaintiffs have not alleged VW's knowledge prior to all of the Plaintiffs obtaining their cars, without more, fails.

VW also complains that the Plaintiffs' knowledge allegations are overly vague, generic, and conclusory. After carefully reviewing the complaint, the Court disagrees. The Plaintiffs have pleaded that, "beginning in at least 2010, CC drivers began taking their cars to authorized Volkswagen dealerships to complain about improper and accelerated tire wear" and that since then "thousands of CC drivers" have done the same. (*Id.* at ¶¶ 200–01.) They maintain that, "beginning at least as early as 2010, [VW] regional service representatives learned from [VW] dealerships that an inordinate number of CC drivers were suffering from improper and accelerated tire wear" and that dealerships were recording "orders related to CC that had suffered improper and accelerated tire wear." (*Id.* at ¶ 208, 211.) The Plaintiffs also detail that, "as early as 2010, [VW] knew of the [d]efect through comments and postings . . . on NHTSA webpages [and] on webpages belonging to, or actively monitored by, [VW]." (*Id.* at ¶ 337.) In describing the complaints from these sources, the Plaintiffs reproduced "just a sampling of the common, nationwide complaints about the [d]efect that appear on NHTS's database" and thirty-seven complaints from various online message boards. (*Id.* at ¶ 220–23.) These complaints all refer to abnormal tire wear and many describe the problem as being the result of a defect in the car. (*Id.* at ¶¶ 220.d., g., h., i., k., 223.a., c., d., f., k., n., o., q., u., y., z., aa., bb., dd., ee., ff., hh.) The Court finds that taken together, these allegations, if true, and drawing all reasonable inferences in the Plaintiffs' favor, would be enough to establish VW's notice of the defect prior to any one Plaintiff's acquisition of his or her car.

VW cites a number of cases to support its argument that the Plaintiffs' allegations are inadequate. The Court finds all of these cases either distinguishable or unsupportive of VW's position. For example, VW cites a California district court case to support its contention that the Plaintiffs' allegations are insufficient to show that VW had notice of a widespread defect in the CC. In that case, however, the plaintiffs' allegations fell far short of the

Plaintiffs' allegations here. For example, in *Resnick v. Hyundai Motor Am., Inc.*, the plaintiffs alleged only "general . . . 'concerns' regarding the possibility of [a defect]." No. CV1600593BROPJWX, 2017 WL 1531192, at *14 (C.D. Cal. Apr. 13, 2017). The plaintiffs there did "not allege who had these concerns, the substance of the concerns, or whether the concerns were ever communicated to [the defendant]." *Id.* Moreover, in *Resnick*, the Plaintiffs only referenced "several" anonymous online complaints and failed to allege that the defendant monitored the websites on which they appeared or was even aware of the online complaints. In stark contrast to the sparse factual allegations presented by the *Resnick* plaintiffs, the Plaintiffs here have presented far more, as detailed above. Additionally, the Plaintiffs here have unequivocally alleged that VW actively monitored the NHTSA database and online forums. (*E.g.*, Am. Compl. at ¶¶ 219, 222.)

Nor does the Court find VW's citation to *Berenblat v. Apple, Inc.* supportive of its argument. No. 08-4969 JF (PVT), 2010 WL 1460297, at *8 (N.D. Cal. Apr. 9, 2010). VW's parenthetical suggests that the court in *Berenblat* concluded that "allegations of 350 complaints on defendant's website" were insufficient to plead the defendant's knowledge of a defect and that such complaints "merely establish[ed] that some consumers were complaining." *Id.* at *9. The key difference between this case and *Berenblat*, however, is that the plaintiffs there merely presented "postings from affected consumers memorializ[ing] conversations between consumers and [the defendant's] personnel." One, or some, of the postings "accuse[d the defendant] of removing "a thread of 350+ complaints about the [defective product] from its website." *Id.* at *8. But the existence of the "350+" complaints was itself only an allegation. Nor are any other details about the postings provided. These allegations are a far cry from the numerous, detailed complaints, of which the Plaintiffs allege VW was fully aware, set forth by the Plaintiffs in this case.

VW additionally relies on a Ninth Circuit opinion for the proposition that the Plaintiffs must be able to show that VW *itself* considered the volume of consumer complaints to be "significant and beyond the norm." (Jt. Mot. at 14 n. 16 (quoting *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1027, 1027 n. 8 (9th Cir. 2017)).) But the Ninth Circuit there only noted that the alleged facts in case before it were particularly compelling. *Id.* at 1027 n. 8. This was because, in addition to allegations that the defendant was aware of unusually high levels of reported defects, the defendant manifested this awareness by establishing a dedicated customer center to handle the complaints. *Id.* This case did not, however, introduce an additional requirement that obliges a plaintiff to show that a defendant recognized the significance of a high volume of complaints alerting it to a product defect.

Because the Court finds that the Plaintiffs have adequately alleged VW's prior knowledge of the defect, it denies VW's motion to dismiss premised on this ground.

## C. Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTPA") Claim

VW argues that Plaintiff Gray's count twelve, alleging violation of LUTPA, must be dismissed because a claim under LUTPA is subject to an absolute limitation period of one year from the time of the allegedly deceptive transaction. The parties cite conflicting case law from intermediate appellate state courts in Louisiana. The Plaintiffs' case provides that "[w]hen the tortious conduct and resulting damages continue, prescription does not begin until the conduct causing the damages is abated." *Benton, Benton and Benton v. Louisiana Pub. Facilities Auth.*, 672 So. 2d 720, 723 (La. App. 1st Cir. 1996), *writ denied*, 679 So. 2d 110 (La. 1996) (quotation omitted). VW's case, on the other hand, held that the one-year limitation period could not be suspended or interrupted by a continuing tort. *Glod v. Baker*, 899 So. 2d 642, 646 (La. App. 3d Cir. 2005), *writ denied*, 920 So. 2d 238 (La. 2006). Even if the Court assumes the Plaintiffs' case has the better argument, the Plaintiffs' complaint with respect to Plaintiff Gray would nonetheless fail.

The specific allegations relating to Gray assert that she purchased her CC in March 2012; that she brought her car to a dealership in October 2014 where she was told her tires were unevenly worn and cupped and needed to be replaced; that she thereafter replaced all four tires; that sometime in or after September 2015, the same dealership had her replace two of her tires; and that on September 8, 2016, she brought her car to a tire store that told her all four tires were again unevenly worn and cupped and needed to be replaced. Gray was added to the Plaintiffs' amended complaint on November 20, 2017. None of the events she recounts occurred within one year of her complaint. The Plaintiffs' arguments that, apparently to this day, "[VW] has refused to acknowledge or fix the [d]efect" and that "[Gray] continues to suffer from the [d]efect" do not salvage her claim. (Pls.' Resp. at 18.) Such allegations are attendant to most unfair trade practice claims and don't amount to, in and of themselves, a continuation of the wrong.

Because the Court finds Gray's count-twelve claim, brought under LUTPA, time barred (under either framework), it declines to evaluate VW's alternate argument regarding whether this claim would in any event be preempted by the Louisiana Products Liability Act ("LPLA").

## D. Economic Loss Rule

VW insists that Plaintiffs Garella, L. Wilson, and Blue's common-law fraud claims under count two should be dismissed because they are barred by, respectively, Pennsylvania, Florida, and Missouri's economic-loss rules. The parties present dueling court decisions opining on whether the economic-law rule bars the Plaintiffs' claims for common-law fraud within these three states. In each instance, the Court finds the better argument, in each state, is that the economic-loss rule does not bar the common-law fraud claims presented in this case.

First, with respect to the rule in Florida, as described recently by the Eleventh Circuit, the "economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1030 (11th Cir. 2017) (quoting *Tiara Condominium Assoc., Inc. v. Marsh & McLennan Companies*, 110 So.3d 399, 401 (Fla. 2013)). As the Eleventh Circuit explained, "[t]he rule was designed to prevent the application of tort remedies to traditional contract law damages." *Glob. Quest, LLC*, 849 F.3d at 1030. In Florida, however, as set forth by the Florida Supreme Court, "the economic loss rule applies only in the products liability context." *Tiara Condominium*, 110 So. 3. 399, 407. Thus, the economic-loss rule cannot, in any event, be applied to bar any of the Plaintiffs' fraud claims that relate to express-warranty claims, or contracts, between the parties. Instead, as made clear in *Tiara Condominium*, whether a plaintiff's claim sounding in tort is foreclosed by the parties' agreement must be resolved by the application of "fundamental contractual principles."[6] *Id.* at 405 (quotation omitted). In any event, whether evaluated through the lens of "either privity of contract or products liability," a claim for "fraudulent inducement" is excepted regardless and should not be barred as a matter of course. *Id.* at 406.[7]

---

[6] VW does not ever argue that contract principles foreclose the Plaintiffs' fraud claims.

[7] To the extent the cases relied upon by VW maintain that fraudulent inducement or concealment claims are foreclosed "where the action for fraud depends upon precisely the same allegations as a warranty claim—i.e., a claim the product failed to work as promised," the Court, of course, agrees. *See, e.g., Takata Airbag*, 193 F. Supp. 3d at 1338–39 (Moreno, J.). But that is not the case here. Instead, the Plaintiffs' fraud-claim allegations implicate VW's concealing, suppressing, and/or misrepresenting material facts regarding its cars' defects and steps VW took to ensure that the defects were not revealed. (Am. Compl. at ¶¶ 301–02.) These claims are distinct, as such claims ordinarily would be, from Plaintiffs' complaints that the product simply failed to work as VW promised. *See Glob. Quest*, 849 F.3d at 1031 (describing the requirement that "a fraudulent inducement claim . . . be independent of a breach of contract claim" as

As recognized by the Third Circuit Court of Appeal, the Supreme Court of Pennsylvania has not addressed whether the economic-loss doctrine applies to fraud claims under Pennsylvania law. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670 (3d Cir. 2002). After a lengthy analysis of the broad split in authority on the topic, the Third Circuit predicted that the Pennsylvania Supreme Court would bar a fraud claim in the product-liability context under the economic-loss doctrine. Since then, however, there have been indications from Pennsylvania's intermediate appellate courts that this prediction may not be borne out. Having reviewed these cases the court agrees "there are good reasons to predict that, if confronted with the question, the Pennsylvania Supreme Court would hold that the economic loss doctrine does not apply to intentional torts." *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 435–36 (S.D.N.Y. 2017), *modified on reconsideration (on other grounds)*, 14-MC-2543 (JMF), 2017 WL 3443623 (S.D.N.Y. Aug. 9, 2017). The Court also agrees that "there are strong public policy reasons to 'leave the possibility of an intentional tort suit hanging over the head of a party considering outright fraud.'" *Id.* (quoting *Air Prods. Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F.Supp.2d 329, 336 (E.D. Pa. 2003) (alterations omitted)). Because "the economic loss doctrine is premised on the notion that parties to a contract may protect themselves from negligence or defective products by negotiating the liability terms of the contract, . . . it is impracticable, if not impossible, for parties to negotiate terms regarding what happens if one of them is intentionally deceiving the other." *Gen. Motors*, 257 F. Supp. 3d at 435–36 (quoting *Air Prods.*, 256 F. Supp. 2d at 336).

For similar reasons, the Court also finds that the Plaintiffs' claims are not barred under Missouri's economic-loss rule either. VW relies on *Flynn v. CTB, Inc.* to support its argument to the contrary. 1:12CV68 SNLJ, 2015 WL 5692299, at *11 (E.D. Mo. Sept. 28, 2015). But the Court finds this case unavailing. In *Flynn*, the court found that the "fraudulent inducement exception [to the economic-loss rule] is subject to a widely recognized limitation that where the fraudulent misrepresentation concerns the quality, character, or safety of the goods sold, the economic loss doctrine bars the fraud claim because it is substantially redundant with warranty claims." *Id.* at *12. The Court finds such a limitation inapplicable here: the Plaintiffs' fraud-claim allegations implicate VW's concealing, suppressing, and/or misrepresenting material facts regarding its cars' defects and steps VW took to ensure that the defect was not revealed. (Am. Compl. at ¶¶ 301–02.) These claims are certainly

---

"minimal"); *see also Oceanic Villas, Inc. v. Godson*, 4 So. 2d 689, 690 (Fla. 1941) ("It is well settled that a party can[]not contract against liability for his own fraud.")

not coextensive with the Plaintiffs' warranty claims; instead of concerning the "quality, character, or safety of the goods sold," these claims concern VW's alleged intentional misrepresentations or concealments of known defects of the goods sold.

For all of these reasons, the Court denies VW's motion to dismiss Plaintiffs Garella, L. Wilson, and Blue's common-law fraud claims, under count two, with respect to Pennsylvania, Florida, and Missouri law.

### E. California Consumer Protection Claims and California Common-Law Fraud Claims

VW contends that Plaintiff Maytum's California consumer protection claims (counts six and seven) and California common-law fraud claims (count two) must be dismissed for two reasons: the California consumer protection claims (under California's Unfair Competition Law ("UCL") and California's Fair Advertising Law ("FAL")) provide only for equitable relief and Maytun has an adequate remedy at law; and Maytun is required to but fails to plead actual reliance with Rule 9(b) specificity. Because the Court agrees with VW's second argument it declines to address is equitable-remedy contention.

The parties do not appear to dispute that claims under the UCL and the FAL, as well as California common-law fraud claims, must allege actual reliance on misrepresentations or omissions with Rule 9(b) specificity. (Jt. Mot. at 17; Pls.' Resp. at 18–19; s*ee also Ehrlich v. BMW of N.A., LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal. 2010) (dismissing claim under the UCL because the plaintiff failed to plead "actual reliance"); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (California claims based on fraud, such as claims under the UCL, must be pleaded with Rule 9(b) particularity); *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1266 (N.D. Cal. 2014) ("A claim under the FAL must show . . . actual and reasonable reliance on the purported misleading statements.").) The Plaintiffs maintain they have satisfied this standard; VW claims they have not.

According to the Plaintiffs, in the complaint, Maytum, "identifies precisely the dealerships that repeatedly failed to tell him about the [d]efect, and he specifically alleges that he would not have bought his CC—or at the very least he would have paid less for it—if he had known about the [d]efect." (Pls.' Resp. at 18–19 (citing Am. Compl. at ¶¶ 36, 374, 382).) But Maytum didn't visit any of the dealerships he "precisely identifies" as concealing the defect until after he purchased his car. (Am. Compl. at ¶¶ 128, 131–32 (alleging that Maytum bought his car in 2015 and that two dealerships in California, in March and December 2016, failed to disclose the defect to him).) The remainder of the Plaintiffs' "reliance" allegations are overly generalized, conclusory, or not

personal to Maytum himself. (*E.g.* Am. Compl. at ¶¶ 374 ("each member of the California Sub-Class . . . relied on the misrepresentation and/or omissions" and "[h]ad the Plaintiffs and the members of the California Sub-Class known the truth, they would not have purchased or leased their vehicles and/or paid as much for them"), 383 (same).) The Court finds that Maytum has not sufficiently pleaded reliance and therefore grants VW's motion to dismiss with respect to Maytum's California statutory claims (counts six and seven) and with respect to Maytum's common-law fraud claim under count two.

## F. Georgia Common-Law-Fraud Claim

VW next argues that Plaintiff Glasband's common-law-fraud claim under Georgia law should be dismissed because he bought his car after the expiration of the car's warranty period. According to VW, under Georgia law, no duty to disclose is owed to a used-car purchaser who had no relationship with the defendant. In support of its argument, VW cites *McCabe v. Daimler AG.*, 160 F. Supp. 3d 1337, 1351 (N.D. Ga. 2015). But Glasband alleges that, prior to buying his car, he brought it to a VW dealership in Georgia where he was told "there was nothing wrong with the car except that it needed an alignment and two new front tires." *Id.* In *McCabe*, the court found that the plaintiffs' claim failed because "there [was] no evidence that [the d]efendants had direct knowledge of [the p]laintiffs' purchase of the vehicles in question and had no apparent relationship with [the p]laintiffs." *Id.* Here, the Plaintiffs have presented "direct evidence" of the Defendant's "knowledge" of Glasband's purchase. Further, Glasband has certainly alleged "some relationship" between himself and VW. *Id.* (noting there must be "at least some relationship between the parties"). Based on the allegations in the complaint and the authorities presented by VW, the Court finds no reason to dismiss Glasband's common-law fraud claim under Georgia law.

## G. Class Action Claims under Ohio and Utah's Consumer Sales Practices Acts

The consumer-protection statutes in some states prohibit plaintiffs from pursuing class-action relief under those laws. Ohio and Utah are two of those states. This is at odds with Rule 23, which "unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406 (2010). In addressing the conflict, the *Shady Grove* Court held, in a markedly fractured decision, "that a New York law that broadly prohibited class actions in suits seeking penalties or statutory minimum damages conflicted with Rule 23 and was preempted such

that it would not apply in a federal court sitting in diversity." *Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 726 (D.S.C. 2016) (citing *Shady Grove*, 559 U.S. at 398–401). The Eleventh Circuit applied *Shady Grove* to find that class claims under the Alabama Deceptive Trade Practices Act were permissible because that statute's prohibition on private-class actions, much like the New York statute under review in *Shady Grove*, was superseded by Rule 23. *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335 (11th Cir. 2015). In making its decision, the Eleventh Circuit found it unnecessary to address whether Justice Scalia's plurality opinion or Justice Stevens's concurrence controlled. *Id.* at 1337. The need for that resolution was obviated, reasoned the Eleventh Circuit, because its decision would remain the same regardless of which framework was applied. *Id.* at 1336. According to the Eleventh Circuit, the disputed issue boiled down to only one question: whether plaintiffs may seek redress in one action or must instead each bring separate actions. *Id.* 1337. Based on its analysis, the Eleventh Circuit concluded, "on any view," "Rule 23 does not 'abridge, enlarge or modify any substantive right.'"

The Ohio statute at issue in this case differs markedly from the Alabama statute at issue in *Lisk*, however. Under the Ohio Consumer Sales Practices Act ("OCSPA"),

> Plaintiffs bringing claims on behalf of a class must demonstrate that either (1) the alleged violation is an act or practice that was declared to be deceptive or unconscionable by a rule adopted by the Attorney General before the consumer transaction on which the action is based or (2) the alleged violation is an act or practice that was determined by a court to violate the OCSPA and the court's decision was available for inspection before the transaction took place.

*In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 868 (S.D. Ohio 2012). Rather than foreclosing the opportunity to pursue a class action at all, the Ohio statute, instead, defines substantive rights: what a consumer needs to prove in order to succeed on a claim. Thus, to allow such a claim to proceed without requiring the plaintiff to properly allege notice under the statute, would "abridge, enlarge or modify [a] substantive right." Because, "federal rules cannot displace a State's definition of its own rights and remedies," *Beal ex rel. Putnam v. Walgreen Co.*, 408 Fed. App'x 898, 902 n. 2 (6th Cir. 2010) (quoting *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring), the Court agrees with VW that Ohio's class action notice requirements are applicable here.

The Plaintiffs argue that even if the Ohio notice requirements are applicable, they have nonetheless sufficiently alleged such notice by averring that VW "(1) knew about the [d]efect but nevertheless failed to disclose it; (2)

lied about the [defect] and instructed its dealers to do the same; and (3) violated its [warranty] by failing to fix the [d]efect." (Pls.' Resp. at 20.) But the Plaintiffs are required to allege that the violation itself was either (1) declared by the Ohio Attorney General to be deceptive or unconscionable or (2) determined by an Ohio state court to violate the OCSPA. They have done neither. Instead, in their response to VW's motion, the Plaintiffs merely cite, in a footnote, an Ohio state court decision which the Plaintiffs describe as determining "that it was a deceptive practice to tell [a] buyer that a vehicle is free of defects when it was not." (Pls.' Resp. at 20 n. 39 (citing *Keel v. Toledo Harley-Davidson/Buell*, 920 N.E.2d 1041, 1044–46 (Ohio Ct. App. 2009)).) But under Ohio law "a consumer may bring a class action under the OCSPA only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive." *Kline v. Mortgage Electronic Sec. Systems*, 2010 WL 6298271, at *6 (S.D. Ohio, 2010) (quotations omitted). Further, "'[s]ubstantial similarity' means a similarity not in every detail, but in essential circumstances or conditions." *Id.* (quotations omitted). The Plaintiffs have certainly not alleged as much in their complaint nor have they met this burden in opposition to VW's motion to dismiss. *Volbers-Klarich v. Middletown Mgt., Inc.*, 929 N.E.2d 434, 441 (Ohio 2010) ("A general rule is not sufficient to put a reasonable person on notice of the prohibition against a specific act or practice.") The Court thus grants VW's motion to dismiss the Plaintiffs' class claims under OCSPA (count twenty-one).

VW, in reply, acknowledges that *Lisk* "seems to foreclose the application of the Utah class action requirement" but instead appears to invite the Court to part ways with the Eleventh Circuit's opinion as "most courts outside of [the] circuit implicitly or explicitly disagree[] with its interpretation of *Shady Grove*." (Defs.' Reply at 10, n. 15 (quoting *Delgado v. Ocwen Loan Servicing, LLC*, 13CV4427NGGST, 2017 WL 5201079, at *10 (E.D.N.Y. Nov. 9, 2017)).) The Court declines the invitation and denies VW's motion with respect to the Utah class claims.

## H. Statute of Limitations of the Florida and Ohio Consumer Protection Claims

Lastly, VW urges the Court to dismiss Plaintiffs L. Wilson and Panopoulos's claims under, respectively, Florida and Ohio's consumer protection statutes. In opposition, the Plaintiffs counter that Florida's four-year and Ohio's two-year statutes of limitations should be tolled based on the Plaintiffs' allegations that VW fraudulently concealed the defect. For the same reasons this argument failed to convince with respect to the Plaintiffs' express- and implied-warranty claims, it fails to convince with respect to the Plaintiffs'

Florida and Ohio consumer-protection claims. The Court thus grants VW's motion to dismiss counts nine and twenty-one as time barred.

### 6. Magnuson-Moss Warranty Act Claims

"[A] Magnuson–Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated." *Melton v. Cent. Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (Moreno, J.) (citing *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 n.1 (11th Cir. 2006)). Because the Court has dismissed all of Plaintiffs Blue, Brown, Glasband, Panopoulos, Spelrem, T. Wilson, and Johnson's warranty claims, their derivative MMWA claims must also be dismissed under count one.

### 7. Conclusion

Based on the foregoing, the Court **grants in part and denies in part** VW's joint motion to dismiss (**ECF No. 34**). In sum, the Court grants VW's motion to dismiss the following:

(1) **Blue**, **Brown**, **Glasband**, **Panopoulos**, **Spelrem**, **T. Wilson**, and **Johnson's** warranty claims under the MMWA as set forth in **count one** (count one remains viable as to the other Plaintiffs);

(2) **Maytum**'s common-law fraud claim under **count two** (count two remains viable as to the other Plaintiffs);

(3) **Blue**, **Brown**, **Glasband**, **Martino**, **Panopoulos**, **T. Wilson**, **Spelrem**, and **Johnson's** implied-warranty claims under **count three** (count three remains viable as to the other Plaintiffs);

(4) **Blue**, **Brown**, **Spelrem**, **Glasband**, **Gray**, **Panopoulos**, **T. Wilson**, and **Johnson's** express-warranty claims under **count four** (count four remains viable as to the other Plaintiffs);

(5) **Maytum's** two statutory claims under California law as set forth in **counts six** and **seven**;

(6) **L. Wilson's** Florida Deceptive and Unfair Trade Practices Act as set forth in **count nine**;

(7) **Gray's** Louisiana Unfair Trade Practices and Consumer Protection Law claim under **count twelve**;

(8) **Blue**'s implied-warranty claim under Missouri statute in **count fifteen**;

(9) **Martino's** implied-warranty claim under New Jersey statute in **count sixteen**;

(10) **Panopoulos's** Ohio Consumer Sales Practices Act claim in **count twenty-one**;

(11) **T. Wilson's** implied-warranty claim under Texas statute in **count twenty-five** (count twenty-five remains viable as Plaintiff Cruz); and

(12) **Johnson's** implied-warranty claim under Virginia statute in **count twenty-nine**.

By the parties' agreement, the Court also dismisses Glasband's Georgia Uniform Deceptive Trade Practices Act claim under **count eleven** and Brown's North Carolina Unfair and Deceptive Trade Practices Act claim under **count twenty**.

The Plaintiffs' have not requested leave to amend; nor have they indicated in their response to VW's motion to dismiss any inclination whatsoever to do so. The Court thus dismisses the aforementioned claims **with prejudice**. *Wagner v. Daewoo Heavy Industries Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Avena v. Imperial Salon & Spa, Inc.*, 17-14179, 2018 WL 3239707, at *3 (11th Cir. July 3, 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.")

**Done and ordered** at Miami, Florida, on September 26, 2018.

Robert N. Scola, Jr.
United States District Judge