UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

S.D. Fla. Case No. 1:17-cv-23033-SCOLA

LILA WILSON, MATTHEW MARTINO,
THOMAS WILSON, TERESA GARELLA,
MARY BLUE, RYAN BROWN, BRIAN
MAYTUM, LEIGH GLASBAND, NICK
PANOPOULOS, CARISSA MACCHIONE,
SYDNEE JOHNSON, JORGE CRUZ,
DEBBIE GRAY, LORNE SPELREM, and
ISMAEL ORRANTIA, on behalf of themselves
and all others similarly situated,

      Plaintiffs

v.

VOLKSWAGEN GROUP OF AMERICA, INC.
and VOLKSWAGEN, AG,

      Defendants.

_____/

PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF
SETTLEMENT CLASS, AND APPLICATION FOR CLASS REPRESENTATIVE
SERVICE AWARDS AND CLASS COUNSEL'S ATTORNEYS' FEES,
<u>AND INCORPORATED MEMORANDUM OF LAW</u>

**PODHURST ORSECK, P.A.**
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Email: pprieto@podhurst.com
      mweinshall@podhurst.com
      adelriego@podhurst.com

*Counsel for Plaintiffs*

(Additional counsel listed below)

**<u>TABLE OF CONTENTS</u>**

**PAGE**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 3

    A.  Factual Background. ...................................................................................... 3

    B.  Procedural History. ....................................................................................... 4

    C.  Settlement Negotiations. ............................................................................... 5

TERMS OF THE SETTLEMENT ....................................................................................... 6

    A.  The Settlement Class ..................................................................................... 6

    B.  Future Tire Rotations. ................................................................................... 7

    C.  Reimbursement for Past Qualifying Tire Wear Replacements. ..................... 7

    D.  Reimbursement for Past Qualifying Tire Rotations. ..................................... 8

    E.  Release. ......................................................................................................... 9

    F.  Notice Plan. .................................................................................................. 9

    G.  Settlement Administration. .......................................................................... 10

    H.  Attorneys' Fees and Service Awards for Class Representatives. ................. 11

MEMORANDUM OF LAW ............................................................................................ 11

    I.      The Court Should Grant Final Approval To The Settlement. ....................... 11

    A.  The Approved Notice Program Gave the Best Practicable Notice to Class Members and Satisfied Rule 23 and Due Process. ........................................................... 12

    B.  The Settlement is Fair, Reasonable, and Adequate. ..................................... 14

         i.    The Settlement is the product of adequate representation from the Class Representatives and Class Counsel and good-faith, informed, arm's-length negotiations. ............................................................................................ 16

         ii.   The Settlement relief provided for the Class is far more than adequate. ............ 17

         iii.  The Settlement treats Class Members equitably relative to each other. .............. 21

i

II.    The Court Should Grant Final Certification Of The Settlement Class. ...................... 21

III.   Application For Class Representative Service Awards. ............................................. 24

IV.    Class Counsel's Fee Application. ............................................................................ 25

    A.  The Law Awards Class Counsel Fees From The Common Fund Created By Their
    Efforts. .................................................................................................................... 25

    B.  The *Johnson* Factors Support Class Counsel's Requested Fee. ................................ 27

        i.    The requested fee comports with customary fees awarded in similar cases. ...... 28

        ii.   The claims against Volkswagen required substantial time and labor. ................ 29

        iii.  The issues involved were novel and difficult and required the exceptional skill of
        a highly talented group of attorneys. ............................................................... 30

        iv.   The claims against Volkswagen entailed considerable risk. .............................. 31

        v.    Class Counsel pursued this Action on a pure contingency basis, and were
        precluded from other employment. ................................................................... 32

        vi.   Class Counsel achieved an excellent result. ...................................................... 33

CONCLUSION ..................................................................................................................... 33

Class Counsel and Class Representatives respectfully move, under Rule 23 of the Federal Rules of Civil Procedure, for Final Approval of the Settlement with Volkswagen Group of America, Inc. and Volkswagen AG (collectively "Volkswagen"), certification of the Class defined in the Settlement, service awards for the named Class Representatives, and an award of attorneys' fees to Class Counsel.[1]

## INTRODUCTION

Subject to this Court's approval, Plaintiffs, on behalf of the Settlement Class, have agreed to resolve all claims asserted in this lawsuit against Volkswagen through a Settlement worth approximately $57.3 million.  This is an outstanding result for the Class and warrants this Court's approval.

This litigation began nearly two years ago, when Plaintiff car owners and lessees sued Volkswagen for economic damages arising from allegedly defective suspension systems in Plaintiffs' vehicles.  Plaintiffs alleged that this common defect existed in model year 2009 through 2017 Volkswagen CC vehicles and was concealed from purchasers and lessees. Specifically, Plaintiffs alleged, the defective suspension systems do not allow technicians to adjust the vehicles' front camber or rear camber sufficiently when they inevitably deviate from Volkswagen's alignment specifications. It is claimed that this unfixable camber misalignment in turn causes improper and accelerated tire wear, which can present serious safety risks to vehicle occupants. Volkswagen has denied the existence of any defect in the suspension system of its model year 2009 through 2017 CC vehicles and has litigated this action vigorously, contesting the merits of Plaintiffs' claims.

In parallel with the litigation track, the parties engaged in extensive negotiations, in good faith and at arm's length, with the benefit of significant discovery.  These negotiations resulted in the proposed Settlement, which provides substantial benefits to the Class. The estimated value of the Settlement, according to the declaration of a valuation expert submitted with this motion, is approximately $57.3 million.

The primary features of the Settlement include:

- Future Tire Rotations: Volkswagen will issue a certificate of eligibility to Settlement Class Members of up to two (2) free tire rotations for their Settlement Class Vehicle to be performed at recommended tire rotation

---

[1] The Settlement Agreement has been filed with the Court.  (ECF No. 103-1.)  Capitalized terms not defined herein shall have the same definitions and meanings ascribed to them in the Settlement.

intervals by authorized Volkswagen dealers, until the Settlement Class Vehicle reaches an original odometer mileage of one hundred ten thousand (110,000) miles. These certificates automatically transfer and remain with the Settlement Class Vehicle upon its sale.

- Pro Rata Out-of-Pocket Claims Process: Settlement Class Members may submit claims for pro rata reimbursement of past expenses incurred for both Qualifying Tire Replacements and Qualifying Tire Rotations. These claims will be reviewed and managed by the Claims Administrator.

  o Past Qualifying Tire Replacements: Settlement Class Members may submit claims for pro rata reimbursement of out-of-pocket expenses for Qualifying Tire Wear Replacements paid for prior to the Effective Date of the Settlement. Specifically, Settlement Class Members may submit claims for Qualifying Tire Wear Replacements performed within 35,000 miles since the date of installation of a tire with the Relevant Tire Specifications on the Settlement Class Vehicle, at a pro rata amount to be calculated based on the following formula: (1- (tire mileage/35,000)) x (cost of replacement tire). That amount is limited to a maximum of $209.00 for each qualifying 235/45R17 replacement tire and $254.00 for each qualifying 235/40R18 replacement tire.

  o Past Qualifying Tire Rotations: Class Members may also submit claims for pro rata reimbursement of out-of-pocket expenses for Qualifying Tire Rotations paid for prior to the Effective Date of the Settlement. Specifically, Settlement Class Members may submit claims for Qualifying Tire Rotations performed within 9,000 miles after either the date of the last rotation of the same tire(s), or if the tire(s) had not been previously rotated, the date of installation of said tire(s), at a pro rata amount to be calculated based on the following formula: (1-(tire mileage/9,000)) x (cost of tire rotation). That amount is limited to $56.00 for each qualifying tire rotation.

In the face of numerous litigation obstacles and legal risks, the proposed Settlement is an exceptional result for the Settlement Class. It will provide cash recovery to eligible Settlement Class Members for past out-of-pocket expenses and increase tire longevity by providing free tire rotations, which also will encourage Settlement Class Members to bring their vehicles to dealerships at the appropriate intervals and for tire inspections. These Settlement benefits ameliorate the harmful effects of the defect alleged in the complaint.

Because the Settlement is fair, adequate, and reasonable under Fed. R. Civ. P. 23(e) and prevailing jurisprudence, and the Class satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3), Class Counsel request that the Court grant final approval of the Settlement and certify

the Settlement Class.  In addition, Class Counsel request that the Court approve service awards to the Class Representatives, whose willingness to represent the Class and active participation in the Action have made this result possible.  Finally, Class Counsel respectfully request that the Court award attorneys' fees in accordance with prevailing Eleventh Circuit precedent and customary fees in similar cases, to compensate Class Counsel for their work in achieving this excellent result for the benefit of the Class.

**BACKGROUND**

### A.  Factual Background.

In 2017, Plaintiffs sued Volkswagen on behalf of themselves and all others similarly situated.  Plaintiffs, who owned or leased model year 2009 through 2017 CC vehicles manufactured or distributed by Volkswagen, alleged that their vehicles were equipped with a defective suspension system.  The suspension system in their vehicles, Plaintiffs alleged, share a common, uniform defect: the system's components fail to allow technicians to sufficiently adjust the vehicle's front camber and rear camber when they deviate from Volkswagen's alignment specifications.  Plaintiffs alleged that as a result of the CC's misaligned cambers, its tires experience improper and accelerated wear.

Plaintiffs alleged that they suffered economic damages as a result of purchasing vehicles with defective suspension systems that were inaccurately represented to be defect-free.  In addition, Plaintiffs claimed to have suffered damages in the form of out-of-pocket expenses, including the cost of otherwise premature tire rotations and replacements.

Defendants deny these claims and maintain that there was and is no defect in the Settlement Class Vehicles' suspension system, nor is there any improper issue with the vehicles' tire rotation schedules, that caused or contributed to the types of tire conditions alleged by Plaintiffs.  Defendants maintain that these vehicles (including their suspension system and tires) were properly designed, manufactured and distributed, were reasonably safe, and functioned and performed in a superior manner.  Defendants also maintain that no warranties (express or implied) were breached, nor were any consumer statutes or other statutes violated in any way.

3

**B. Procedural History.**

On August 10, 2017, Plaintiffs[2] filed a class action complaint in the U.S. District Court for the Southern District of Florida, *Wilson, et al. v. Volkswagen Group of America Inc. et al.*, 1:17-cv-23033 (S.D. Fla.), asserting economic loss claims against Volkswagen Group of America, Inc. and Volkswagen AG for the allegedly defective suspension system contained in model year 2009 through 2017 Volkswagen CC vehicles.[3] (ECF No. 1.) On October 12, 2017, Volkswagen Group of America filed a motion to dismiss. (ECF No. 18.)

On November 20, 2017, Plaintiffs filed a First Amended Class Action Complaint.[4] (ECF No. 26.) On November 21, 2017, the Court entered an order finding Volkswagen Group of America's motion to dismiss moot upon the filing of Plaintiffs' First Amended Class Action Complaint. (ECF No. 27.)

On January 12, 2018, Volkswagen Group of America filed a motion to dismiss Plaintiffs' First Amended Class Action Complaint. (ECF No. 34.) In its motion, Volkswagen Group of America zealously argued that twenty-one of Plaintiffs' twenty-nine claims should be dismissed for a variety of reasons, including failure to meet the heightened pleading standard required for fraud claims, failure to plead Volkswagen's knowledge of the defect, and expiration of various statutes of limitation. *Id.* Plaintiffs filed an opposition to Volkswagen Group of America's motion to dismiss on February 26, 2018 (ECF No. 41), and Volkswagen Group of America filed its reply to Plaintiffs' opposition on March 30, 2018 (ECF No. 48). On April 3, 2018, Volkswagen AG filed its own motion to dismiss, incorporating the arguments raised by Volkswagen Group of America and asserting additional arguments for dismissal. (ECF No. 49.) Plaintiffs filed an opposition to Volkswagen AG's motion on April 27, 2018 (ECF No. 52), and Volkswagen AG filed its reply on May 4, 2018 (ECF No. 53).

---

[2] Lila Wilson, Matthew Marino, Thomas Wilson, Teresa Garella, Mary Blue, Ryan Brown, Brian Maytum, Leigh Glasband, and Nick Panopoulous were the named plaintiffs in that complaint.

[3] On August 14, 2017, a second putative action containing the same allegations was filed against Defendants by many of the same plaintiffs in the U.S. District Court for the District of New Jersey, *Martino et al. v. Volkswagen Group of America Inc. et al.*, 1:17-cv-06035 (D.N.J.) ("*Martino*"). *Martino* was subsequently transferred to this Court for all further proceedings. The *Martino* case, which has remained dormant by virtue of this case, is included in this proposed Settlement.

[4] The First Amended Class Action Complaint added Carissa Macchione, Sydnee Johnson, Jorge Cruz, Debbie Gray, Lorne Spelrem, and Ismael Orrantia as named plaintiffs.

On September 26, 2018, this Court entered an order granting in part and denying in part Volkswagen Group of America's motion to dismiss. (ECF No. 78.) Specifically, the Court granted Volkswagen of America's motion to dismiss certain Plaintiffs' Magnuson-Moss Warranty Act claims and certain warranty, fraud, and statutory claims. The Court dismissed these claims with prejudice. *Id.* at 24–25. Plaintiffs filed a motion for partial reconsideration of the Court's order with respect to certain claims and alternatively sought leave to amend their complaint. (ECF No. 87.) The Court denied Plaintiffs' motion for reconsideration entirely on November 30, 2018. (ECF No. 90.) The Court, however, also denied Volkswagen AG's motion to dismiss on November 30, 2018. (ECF No.89.) On October 24, 2018, both Defendants filed their respective answers and affirmative defenses. (ECF Nos. 84 and 85.) Defendants asserted no less than forty-five (45) affirmative defenses. *Id.*

Significant discovery has taken place in this case. Over the past two years, Defendants have produced a substantial volume of documents through discovery. Plaintiffs' counsel have dedicated teams of attorneys to the laborious work of reviewing these documents, many of which are in German, requiring expensive and time-consuming translation, at significant expense—which Plaintiffs' counsel have borne. Plaintiffs' counsel also have retained and worked extensively with multiple experts—including the preparation of initial expert reports—on liability and damages issues in an effort to prepare the case for trial.

### C. Settlement Negotiations.

Preliminary settlement discussions began in November 2018, between Plaintiffs' counsel and Volkswagen's counsel. During these preliminary discussions as well as subsequent negotiations, the Parties discussed their relative views of the law, facts, and potential relief for the proposed Class and exchanged a series of counterproposals for key conceptual aspects of a potential settlement. This included an in-person mediation session before Francis L. Carter, Esq. After numerous subsequent phone conferences, the Parties ultimately reached an agreement in principle in June 2019. On June 27, 2019, as the Parties negotiated and drafted the terms of the written Settlement, the Parties informed the Court that "they were nearing a proposed class settlement to resolve the claims asserted in this action." (ECF No. 101.) The Court ordered the Parties to file a motion for preliminary approval of the settlement and certification of the Settlement Class no later than July 26, 2019. (ECF No. 102.) The Parties continued to draft and negotiate the precise terms of the Settlement Agreement and related documents for several weeks,

finalized their agreement, and signed the Settlement Agreement on July 26, 2019.  At all times, negotiations were adversarial, non-collusive, and at arm's length.

**TERMS OF THE SETTLEMENT**

The terms of the Settlement are detailed in the Agreement, which has been filed with the Court.  (ECF No. 103-1.)  The following is a summary of the material terms.

**A.  The Settlement Class.**

The Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons and entities who, as of the Notice Date, purchased or leased a Settlement Class Vehicle, as defined in Section I (V) of this Agreement, in the United States of America and Puerto Rico.
>
> Excluded from the Settlement Class are (a) anyone claiming solely personal injury, property damage (other than to the vehicle itself) and/or subrogation; (b) all Judges who have presided over the Wilson Action and Martino Action and their spouses; (c) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (d) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants have a controlling interest; (e) any used car dealer or person/entity engaged in the business of selling used cars; (f) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (g) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (h) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (j) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendants or any Released Parties from any Released Claims; and (k) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class.

*Id.*, § I.T.

"Settlement Class Vehicles" are defined as model year 2009 through 2017 Volkswagen CC vehicles imported and distributed by Defendant Volkswagen Group of America, Inc. for sale or lease in the United States and Puerto Rico.  *See id.*, § I.U.

Based on Volkswagen's sales information and data from IHS Polk, a data firm that tracks registration records, Plaintiffs estimate that there are at least 120,000 potential members of the Settlement Class.

6

### B.  Future Tire Rotations.

Pursuant to the Settlement, Volkswagen will issue a certificate of eligibility for current owners and lessees of the Settlement Class Vehicles awarding up to two (2) free tire rotations at an authorized Volkswagen dealer for each Settlement Class Vehicle, upon the Effective Date of the Settlement, until the vehicle reaches an original odometer mileage of 110,000 miles.  *See id.*, § II.A.  This benefit will be automatically transferred and will remain with the Settlement Class Vehicle upon the sale of the vehicle.  The certificate of eligibility allows the tire rotations to be performed at recommended tire rotation intervals at authorized Volkswagen dealers. This is not only an economic benefit for Class Members, but it also encourages Class Members to rotate their tires at recommended intervals to maximize performance and reduce safety risks.

### C.  Reimbursement for Past Qualifying Tire Wear Replacements.

Another critical feature of the Settlement is an Out-of-Pocket Pro Rata Reimbursement Claims Process for past purchases of replacement tires exhibiting Qualifying Tire Wear on Settlement Class Vehicles. Under the Settlement, Volkswagen will provide pro rata reimbursement for certain tire replacement expenses incurred and paid for by eligible Class Members prior to the Effective Date and within 35,000 miles of use of the replaced tire. Specifically, Class Members that purchased an OE Continental ContiProContact Tire or a replacement tire having the Relevant Tire Specifications on a Settlement Class Vehicle at a Volkswagen dealership or independent service center due to Qualifying Wire Tear will be entitled to receive a pro rata reimbursement of out-of-pocket expenses paid for the tire replacement, in an amount to be calculated based on the following formula: (1- (tire mileage/35,000)) x (cost of replacement tire). Class Members are entitled to recover up to $209.00 for each qualifying 235/45R17 replacement tire and $254.00 for each qualifying 235/40R18 replacement tire.  *See id.*, § II.B.

The Tire Replacement Claim Form, moreover, is straightforward, simple, and not burdensome.  *See id.* at Ex. 1.  It will be provided to Class Members via the Settlement website and will also be physically mailed to Class Members along with the Class Notice. The Settlement Claims Administrator, Epiq Global, will oversee the Claims Process, including the eligibility of claims for reimbursement.  Claim Forms post-marked no later than 150 days after the Notice Date[5]

---

[5] In addition, if the Effective Date of the Settlement occurs on a date that is more than 150 days from the Notice Date, and during the period of time between the end of the 150-day claim period and the Effective Date, the Settlement Class Member incurs an out-of-pocket expense that is covered for pro rata reimbursement under the Settlement, the Class Member may submit a claim

will be reviewed by the Claims Administrator for reimbursement. If any claim is denied by the Claims Administrator as deficient, the Claims Administrator is required to provide the Class Member with a description of and an opportunity to cure the deficiency.

For each approved reimbursement claim, the Claims Administrator will mail to the Settlement Class Member, at the address listed on the Claim Form, a reimbursement check, which will be sent out no later than 75 days after the date of receipt of the Claim Form or within 75 days of the Effective Date, whichever is later. *Id.*, § III.B. There is no limit on the amount of money that Volkswagen is required to pay for valid claims submitted under this provision of the Settlement.

### D. Reimbursement for Past Qualifying Tire Rotations.

In addition to providing a claims process for pro rata reimbursement of Qualifying Tire Wear replacements, the Settlement also provides for pro rata reimbursement of past Qualified Tire Rotation expenses. Under the Settlement, Volkswagen will provide pro rata reimbursement for certain tire rotation expenses that were incurred and paid for prior to the Effective Date of the Settlement and within 9,000 miles of tire usage from the last, most recent tire rotation. Specifically, Class Members may apply for pro rata reimbursement of tire rotations performed within 9,000 miles after either the date of the last rotation of the same tires, or, if the tire(s) had not previously been rotated, the date of installation of said tire(s) on the Settlement Class Vehicle. The Settlement Class Member is entitled to a pro rata reimbursement of out-of-pocket expenses paid for the rotation in an amount calculated based on the following formula: $(1 - (\text{tire mileage}/9{,}000)) \times (\text{cost of tire rotation})$. Class Members may receive up to $56.00 for each qualifying tire rotation. *See id.*, § II.C.

The Tire Rotation Claim Form, moreover, is straightforward, simple, and not burdensome. *See id.* at Ex. 1. It will be provided to Class Members via the Settlement website and will also be physically mailed to Class Members along with the Class Notice and Tire Replacement Claim Form.

The Settlement Claims Administrator will also oversee the Tire Rotation Claims Process, including the eligibility of claims for reimbursement. Claim Forms post-marked no later than 150

---

to the Claims Administrator either online, or by mail post-marked, no later than thirty (30) days after the Effective Date.

days after the Notice Date[6] will be reviewed by the Claims Administrator for reimbursement. If any claim is denied by the Claims Administrator as deficient, the Claims Administrator is required to provide the Class Member with a description of and an opportunity to cure the deficiency.

For each approved reimbursement claim, the Claims Administrator will mail to the Settlement Class Member, at the address listed on the Claim Form, a reimbursement check, which will be sent out no later than 75 days after the date of receipt of the Claim Form or within 75 days of the Effective Date, whichever is later. *Id.*, § III.B. Once again, there is no limit on the amount of money that Volkswagen must pay with respect to valid claims submitted under this provision of the Settlement.

**E. Release.**

Upon entry of final judgment, Class Members agree to provide a release to the "Released Parties," defined essentially as Volkswagen and all related entities, persons and suppliers of the subject tires, for, *inter alia*, all claims "which in any way relate to the suspension system and related components of, tire rotation and maintenance recommendations, instructions and warnings concerning, and/or excessive, uneven and/or premature wear of original or replacement tires of, Settlement Class Vehicles," and all claims that were or could have been asserted in the Action. *Id.*, § I.Q. There is a notable exception carved from the Release: the Settlement explicitly provides that its Release "expressly exempts claims for personal injuries and property damage (other than damage to the Settlement Class Vehicles and/or their original or replacement tires)." *Id.*

**F. Notice Plan.**

The Settlement proposed, and the Court approved in its Preliminary Approval Order, a straightforward Notice Plan designed to satisfy Rule 23 and constitutional due process. As described in a declaration submitted with this motion, the appointed Claims Administrator, Epiq Systems, Inc., implemented the Notice Plan in accordance with this Court's Preliminary Approval Order and the terms of the Settlement. *See* Exhibit B (Declaration of Peter Sperry). After receiving VIN information from Volkswagen for the 142,265 eligible Class Vehicles, Epiq acquired approximately 370,000 records of the names and current or last known addresses of Class Vehicle owners and lessees that corresponded to the Class Vehicle VINs. *Id.*, ¶¶ 5-6. As to these records, Epiq then conducted an address search through the United States Postal Service's National Change

---

[6] See also *supra,* note 5.

of Address system and updated records with the new information it obtained.  *Id.*, ¶ 10.  On November 27, 2019, Epiq then mailed 370,443 Claim Packages, which include the Court-approved Notice as well as Claim Forms, to the potential Class Members.  *Id.*, ¶ 11.

Epiq also launched a Settlement website on November 25, 2019, with the intuitive address www.TireSettlement.com.  *Id.*, ¶ 12.  Class Members can visit the website to obtain additional information about the Settlement, as well as important documents, including the Tire Replacement Claim Form, Tire Rotation Claim Form, Settlement Agreement, Preliminary Approval Order, this motion for final approval, and English and Spanish language versions of the Class Notice. Additionally, the Settlement website enables Eligible Class Members to electronically file a Tire Replacement Claim Form and/or Tire Rotation Claim Form. The Settlement website also contains a summary of options available to Eligible Class Members, deadlines to act, and answers to frequently asked questions. References to the Settlement website are prominently displayed on the Notice.  *Id.*, ¶ 12.

Epiq also established and maintains a toll-free interactive voice response phone number, to provide information to and accommodate inquiries from Class Members.  *Id.*, ¶ 13.  The telephone system is available 24 hours per day, 7 days per week, and in addition to providing Class Members with automated information, it offers the option of leaving a voicemail for a call center representative to call them back, or speaking directly to a call center representative during normal business hours.  *Id.*

To comply with the Class Action Fairness Act, the Claims Administrator also sent to each appropriate State and Federal official the materials specified in 28 U.S.C. § 1715 and otherwise complied with its terms.

### G. Settlement Administration.

The Claims Administrator, Epiq, is charged with administering all aspects of the Settlement.  The Claims Administrator's responsibilities include (1) sending out direct mail notice of the Settlement, (2) creating and maintaining the Settlement website, and (3) overseeing and administering the Claims Process for both pro rata qualifying tire replacement reimbursement claims and pro rata qualifying tire rotation reimbursement claims, a function which requires the exercise of discretion to determine the reasonableness and eligibility of Class Members' claims for out-of-pocket expenses and to deny any fraudulent claims.  Defendants shall be responsible for the costs of the Claims Administrator.  (ECF No. 103-1, § III.A-B.)

### H. Attorneys' Fees and Service Awards for Class Representatives.

Class Counsel, Podhurst Orseck, P.A., Kreher & Trapani LLP, and Pogust Millrood LLC, did not reach an agreement with Volkswagen on attorneys' fees and expenses until after agreeing to the principal terms set forth in the Settlement Agreement. The Settlement Agreement provides that Class Counsel agree to limit their request to the Court for attorneys' fees and expenses to a collective, combined amount of no more than $7.7 million. Likewise, Volkswagen agrees not to oppose such a request. Attorneys' fees and expenses awarded to Class Counsel for work done on behalf of the Class will be paid by Volkswagen.

The Parties agreed that the Court's resolution of the issue of attorneys' fees and expenses shall have no bearing on the Settlement Agreement. In particular, an Order solely relating to attorneys' fees or expenses shall not operate to terminate or cancel the Settlement Agreement or affect or delay its Effective Date.

Finally, it is agreed that Plaintiffs' counsel may petition the Court for service awards of $2,500 per Settlement Class Representative[7] in order to compensate them for their efforts on behalf of the Class.

## MEMORANDUM OF LAW

### I.     The Court Should Grant Final Approval To The Settlement.

Rule 23(e) requires judicial approval for the settlement of claims brought on a class basis. Fed. R. Civ. P. 23(e). "[S]uch approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are guided by the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially applicable to class actions, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 NEWBERG

---

[7] Specifically, Lila Wilson, Matthew Martino, Thomas Wilson, Teresa Garella, Mary Blue, Brian Maytum, Leigh Glasbland, Nick Ponopoulous, Carissa Macchione, Sydnee Johnson, Debbie Gray, Lorne Spelrem, and Ismael Orrantia are entitled to service awards.

ON CLASS ACTIONS § 11.41 (4th ed. 2002) (citing cases).

Rule 23(e) provides five general requirements that must be satisfied for a proposed class settlement to win final approval:

> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(e)).

Here, all five requirements of Rule 23(e) are easily satisfied. The Parties have filed the Settlement Agreement, there are no additional agreements to disclose, a fairness hearing is scheduled for January 27, 2020, Class Members have until December 30, 2019, to object to or opt out of the Settlement, and as discussed below, notice to the Class was reasonable and the Settlement is fair, reasonable, and adequate. *Id.*[8]

**A. The Approved Notice Program Gave the Best Practicable Notice to Class Members and Satisfied Rule 23 and Due Process.**

"For a court to exercise jurisdiction over the claims of absent Class members, there must be minimal procedural due process protection." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007). This requires that class members receive notice that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). Such notice "should describe the action and the plaintiffs' rights in it,"

---

[8] Any objections to the Settlement will be addressed in Plaintiffs' response, which is due on January 13, 2020. (ECF No. 111.)

as well as provide each class member "with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Id.*

This minimal due process requirement is captured in Rule 23(c)(2)(B), which provides that class members in Rule 23(b)(3) actions must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule expressly permits notice by "United States mail, electronic means, or other appropriate means." *Id*.

The Settlement's Notice Plan, as the Court properly determined in its Preliminary Approval Order,

> is reasonably calculated under the circumstances to apprise the Class of the pendency of the Action, class certification for settlement purposes only, the terms of the Settlement, their rights to opt-out of the Class and object to the Settlement, Settlement Class Counsel's Fee Application, and the request for service awards for Plaintiffs. . . . The notices and Notice Plan satisfy all applicable requirements of law, including, but not limited to, Rule 23 and the constitutional requirement of due process.

(ECF No. 109, ¶ 12.) The Settlement's Notice Plan has been and continues to be implemented in accordance with the Court's Order. *See* Ex. B (Sperry Decl.).

As detailed in the declaration of the Claims Administrator, notices, along with claim forms, were mailed to 370,443 potential Class Members, as identified from vehicle information provided by Volkswagen and data acquired from IHS Polk. *Id.*, ¶ 11. The Claims Administrator also utilized address updating services to maximize the possibility of reaching Class Members. *Id.*

This straightforward Notice Plan provides the Court with personal jurisdiction over all members of the Class, because they have received the notice required for due process. *See Shutts*, 472 U.S. at 811-12; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). As required, the Court-approved notice described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The notice sent to Class Members, among other things, described the Class, the release, and the amount and proposed distribution of the Settlement proceeds, and it informed Class Members of

their right to opt-out and object, the procedures for doing so, and the time and place of the Fairness Hearing. *See* Ex. B, Exhibit A thereto. The Notice also informed Class Members that a class judgment would bind them unless they opted out, that Class Counsel would be seeking attorneys' fees of up to $7.7 million, and that additional information could be obtained via the Class Website, where copies of the Agreement and notice were made and remain available for download. *Id.*

In short, Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

### B. The Settlement is Fair, Reasonable, and Adequate.

"The Court should approve a proposed class action settlement where it is 'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Saccoccio*, 297 F.R.D at 691 (quoting *Bennett*, 737 F.2d at 986). In general, a settlement is fair, reasonable, and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted). Instead, "[i]n considering the settlement, the district court may rely upon the judgment of experienced counsel for the parties." *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (quoting *Cotton*, 559 F.2d at 1330).

Recent amendments to Rule 23 highlight several factors relevant to determining whether a proposed settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The Rule provides:

> If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

*Id.* As an advisory note to the recent amendment recognizes, "each circuit has developed its own vocabulary for expressing [ ] concerns" regarding whether a proposed settlement is fair, reasonable and adequate, and the newly codified factors are not intended "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment; *see also* 4 NEWBERG ON CLASS ACTIONS § 13:14 (5th ed.) (noting Rule 23(e) "essentially codified [federal courts'] prior practice").

Indeed, the "core concerns" emphasized in the amended rule, *id.*, are encompassed in the list of factors that prevailing Eleventh Circuit law instructs courts to consider: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, reasonable, and adequate; (4) the complexity, expense, and duration of litigation; (5) the substance and amount of opposition to the settlement; (6) the stage of proceedings at which the settlement was achieved; and (7) the existence of fraud or collusion among the parties in reaching the settlement. *Bennett*, 737 F.2d at 986; *accord Montoya v. PNC Bank, N.A.*, No. 14-cv-20474, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016). Decisional law from this Circuit analyzing the fairness, adequacy, and reasonableness of class settlements, therefore, remains applicable under amended Rule 23(e)(2).

As explained below, an analysis of the factors emphasized in Rule 23(e)(2) and prevailing Eleventh Circuit law shows the Settlement to be fair, reasonable, and adequate.

> ### i. The Settlement is the product of adequate representation from the Class Representatives and Class Counsel and good-faith, informed, arm's-length negotiations.

The first two factors highlighted in amended Rule 23(e)(2)—adequate representation of the Class and arm's-length negotiations—examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. Although the Court, in its Preliminary Approval Order, already found that the Class Representatives and Class Counsel adequately represent the Class, the focus at the final approval stage is on "the actual performance of counsel acting on behalf of the class." *Id.* Pertinent information includes "[t]he conduct of negotiations," as well as "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base." *Id.* These first two factors thus overlap with the Eleventh Circuit's instruction to consider the existence of "fraud or collusion in arriving at the settlement" and "the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 982. Given the extensive, hard-fought litigation that preceded this Settlement, there is no doubt that these factors support final approval.

This Court is well aware of how hard and zealously the Parties and their counsel litigated for almost two years, prior to reaching the Settlement. The sharply contested nature of the proceedings in this case readily shows the lack of fraud or collusion behind the Settlement. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Class Counsel also negotiated the Settlement vigorously. (Ex. A (Weinshall Decl.), ¶¶ 5-11.) Plaintiffs were represented by experienced counsel at these arms-length negotiations. (*Id.*) The lawyers and law firms involved are among the most experienced in complex commercial and class action litigation in the country. (*Id.*) The negotiations were assisted by an experienced

16

mediator, Francis L. Carter.  (*Id.*)  And during the extensive, adversarial negotiations, the Parties exchanged countless proposals while the litigation continued and intensified on a parallel track. (*Id.*)  These negotiations were conducted in the absence of collusion.  (*Id.*)

The negotiations, moreover, were informed by a well-developed factual record that enabled Class Counsel to make a reasoned judgment as to the Settlement.  *See In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) (considering "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating").  While "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations," *Ressler*, 822 F. Supp. at 1555, Plaintiffs reached the Settlement with the benefit of extensive discovery.  (Ex. A (Weinshall Decl.), ¶¶ 10.)  This advanced discovery positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial.  *See Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-Civ, 2008 WL 649124, at *5 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had substantial information to adequately evaluate the merits of the case and weigh the benefits against further litigation.").

### ii.  The Settlement relief provided for the Class is far more than adequate.

The value of the Settlement, estimated by a leading valuation expert to be at least $57.3 million, *see* Ex. C (Stockton Decl.), ¶16, is significant by any measure.  The relief afforded through the Settlement, moreover, directly addresses the issues of liability and damages alleged in the case. It compensates Class Members for the qualifying tire-related expenses they previously incurred, and provides up to two future, free tire rotations per each Settlement Class Vehicle, subject to certain mileage limits, which addresses the tire wear that Class Vehicles may suffer in the future. Considering the substantial benefits that the Settlement provides to Class Members, the Settlement is fair and represents a reasonable recovery for the Class in light of Volkswagen's defenses and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

Indeed, this substantial relief is more than adequate in light of the four factors Rule 23(e)(2) instructs Courts to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2). Each of these factors favors final approval of this Settlement.

### (a)      The Costs and Risks of Trial.

While Plaintiffs and Settlement Class Counsel are confident in the strength of their case, they are also pragmatic in their awareness of the various defenses available to Volkswagen, as well as the risks inherent to litigation. Volkswagen claims and maintains that its model year 2009 through 2017 CC vehicles are not defective and have defect-free suspension systems. Moreover, Volkswagen argues that it had no knowledge of any alleged suspension system defect or problem, that the vehicles' tires do not wear improperly and/or prematurely as claimed by Plaintiffs, and that no warranties (express or implied) were breached or statutes or laws violated in connection with the vehicles and their tires. Volkswagen also challenges the legal merit of Plaintiffs' claims and Plaintiffs' damages theories. Based on the discovery that has been conducted to date, Plaintiffs believe that they could prevail in a litigated class certification battle. Yet Volkswagen would assert numerous defenses to liability and damages, and arguments against certification of all or parts of the Class, presenting risks. Furthermore, even if Plaintiffs were successful, Volkswagen would inevitably seek interlocutory review of class certification rulings via Rule 23(f) in the Court of Appeals, additionally delaying the progress towards trial.

The success of Plaintiffs' claims in future litigation turns on these and other uncertainties that are guaranteed to arise in the context of motions for summary judgment and at trial. Protracted litigation carries inherent risks that would necessarily have delayed and endangered Class Members' monetary recovery. Even if Plaintiffs prevailed at trial against Volkswagen, any recovery could be delayed for years by an appeal. *See Lipuma*, 406 F. Supp. 2d at 1322 (reasoning that the likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

In contrast, the Settlement will provide immediate and substantial relief to tens of thousands of of consumers. As stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Id.* at 560 (alterations in original) (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting

that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive"). Especially because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no reasonable doubt as to the adequacy of the Settlement, which provides immediate, tangible, and significant benefits to the Class.

Moreover, the traditional means for handling claims like those at issue here would unduly tax the court system, require a massive expenditure of public and private resources, and ultimately be impracticable. The Settlement is the best vehicle for Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Given the myriad risks attending Plaintiffs' claims, the Settlement cannot be seen as anything but a fair compromise. *See, e.g.*, *Bennett v. Behring Corp.,* 96 F.R.D. 343, 349-50 (S.D. Fla. 1982) (plaintiffs faced a "myriad of factual and legal problems" that led to "great uncertainty as to the fact and amount of damage," which made it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) (citing the "very real potential that the [c]lass could come away from a long expensive trial with nothing," the court rejected the argument "that the Class should get more"). Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Volkswagen outweighs the risks of continued litigation.

> **(b)     The Effectiveness of the Distribution of the Settlement Benefits.**

The Settlement provides for an effective and adequate means of distributing benefits to the Class. Upon the Effective Date, each present owner or lessee of a Settlement Class Vehicle will be able to download from the Settlement website or obtain from the Claims Administrator a certificate of eligibility for two (2) free tire rotations per Settlement Class Vehicle. (ECF No. 103-1, § II.A.) The certificate can then be easily used at an authorized Volkswagen dealer of the Class Member's choosing until the vehicle reaches an original odometer mileage of 110,000 miles. *Id.*

Pro rata reimbursements for qualifying tire replacements and tire rotations under the Settlement claims process are also easily recoverable by Class Members and are not subject to any class-wide monetary cap. Class Members will receive Claim Forms along with their mailed Class Notice. The forms will also be available on the Settlement website. To submit a claim for either

tire rotation reimbursement or tire replacement reimbursement, Class Members need only fill out the appropriate form and include the requested documentation and information, as described on each form. *Id.*, §§ II.B–C. Checks for approved reimbursement claims will be sent out by the Claims Administrator no later than 75 days after the receipt of the Claim or the Effective Date, whichever is later. *Id.* If any claim is preliminarily found to be deficient, the Claims Administrator will inform the Class Member of the deficiency and provide a 45-day opportunity to cure it or provide any missing information or documentation. *Id.*

This process of submitting a claim for a cash payment is as simple as possible: claims can be submitted online or by mail, and Claim Forms are straightforward and easy to understand. As the Eleventh Circuit concluded in affirming the approval of a settlement with a similar claims process, "the use of a claims process is not inherently suspect," and it is not "particularly difficult or burdensome" to require the completion of a straightforward form that can be submitted either online or by mail. *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 (11th Cir. 2015).

   **(c)      Settlement Class Representative Service Awards and Attorney's Fees.**

The Settlement provides for a service award of $2,500 per Settlement Class Representative. This award is reasonable and commensurate with service awards typically approved in similar consumer class actions, as explained below.

Similarly, the Agreement provides that Class Counsel will seek and accept no more than $7.7 million in combined attorneys' fees and expenses, to which Volkswagen will not object. As explained below, this amount is fair, adequate, and consistent with prevailing law in the Eleventh Circuit and this District. *See Poertner*, 618 F. App'x at 628 (affirming district court's determination that "the settlement's allocation of benefits was fair" because the court's award of fees was a reasonable percentage of the fund established for the benefit of the class).

   **(d)      The Settlement Represents the Full Agreement of the Parties.**

This factor is inapplicable, because there are no other agreements to disclose, aside from the Settlement Agreement itself, which has been filed already. The Court can, therefore, determine the fairness and adequacy of the Parties' proposal by looking solely to the Settlement.

20

### iii. The Settlement treats Class Members equitably relative to each other.

The equitable treatment factor "calls attention to a concern that may apply to some class action settlements—inequitable treatment of some class members vis-a-vis others." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*

This factor further supports final approval here, because all Class Members are treated equitably relative to each other.  No set of Class Members is singled out for preferential or disadvantageous treatment.  The amount each Class Member will receive is based on the Class Member's out-of-pocket expenses actually incurred.  This process appropriately "account[s] for differences among [Class Members'] claims," *id.*, tying the amounts of compensation provided to the different amounts of damages suffered.  *See In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 346 (3d Cir. 2010) (holding that providing different awards for various class members "do[es] not, without more, demonstrate conflicting or antagonistic interests within the class"); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1146 (8th Cir. 1999) ("[A]lmost every settlement will involve different awards for various class members.").

*       *       *

In sum, all the factors identified by the Eleventh Circuit and in Rule 23(e)(2) strongly support a finding that the Settlement is fair, reasonable, and adequate.

### II. The Court Should Grant Final Certification Of The Settlement Class.

For settlement purposes, Plaintiffs respectfully request that the Court certify the Class defined above and in the Agreement.  "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Class certification is appropriate where: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Certification of a class seeking monetary compensation also requires a showing that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its Preliminary Approval Order, this Court previously found the requirements of Rule 23(a) and 23(b)(3) to be satisfied for the Class defined in the Settlement Agreement.  (ECF No. 109, ¶ 8.)  As the Class definition has not changed since preliminary approval, there is no reason for this Court to depart from its previous findings that certification of the Class is warranted.

In particular, as the Court previously recognized (ECF No. 109, ¶ 8(a)), the numerosity requirement of Rule 23(a) is easily satisfied here, because the Class consists of tens of thousands of people throughout the United States, and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area"). The commonality requirement is satisfied as well, because there are many questions of law and fact common to the Class that center on Volkswagen's conduct in manufacturing and selling vehicles with an alleged defect while representing that those vehicles were safe and defect-free, as alleged in the operative Complaint.  *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 673-74 (S.D. Fla. 2011) ("[W]here a common scheme of deceptive conduct has been alleged, the commonality requirement should be satisfied.") (internal quotation marks omitted).

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent Class Members, such that Rule 23(a)(3)'s typicality requirement is satisfied.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiffs, as owners or lessees of Class Vehicles, are typical of absent Class Members because they were subjected to the same conduct by Volkswagen, claim to have suffered the same economic injuries, and will all benefit from the relief provided by the Settlement.

Plaintiffs also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to: (1) whether the proposed class representatives have interests antagonistic to

22

the class; and (2) whether the proposed class counsel has the competence to undertake the litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, and not antagonistic to, the interests of the Class, because Plaintiffs and absent Class Members have an equally great interest in the relief offered by the Settlement, and absent Class Members have no diverging interests.  Further, Plaintiffs are represented by qualified and competent counsel with extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  Class Counsel have devoted substantial time and resources to vigorous litigation of the Action from inception through the date of the Settlement.

With respect to predominance, Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  The predominance requirement is satisfied because liability questions common to all Class Members substantially outweigh any possible issues that are individual to each Class Member.  The salient evidence necessary to establish Plaintiffs' claims is common to both the Class Representatives and all members of the Class—they would all seek to prove that Volkswagen's vehicles have a common defect and that Volkswagen's conduct was wrongful and deceptive.  And the evidentiary presentation changes little if there are 100 class members or 100,000: in either instance, Plaintiffs would present the same evidence of Volkswagen's omissions, marketing, and promised warranties, and the same evidence of the Class Vehicles' alleged common defect.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004) ("[I]f common issues truly predominate over individualized issues in a lawsuit, then 'the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered.'") (quoting *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 322 (5th Cir. 1978)).

Furthermore, there can be no doubt that resolution of tens of thousands of claims in one action is far superior to individual lawsuits.  *See* Fed. R. Civ. P. 23(b)(3).  "Forcing individual

vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010).

Because all requirements of Rule 23 are satisfied, this Court should certify the Class defined in the Settlement.

### III. Application For Class Representative Service Awards.

"In instituting litigation, representative plaintiffs act as private attorneys general seeking a remedy for what appeared to be a public wrong." *Saccoccio*, 297 F.R.D. at 695 (internal quotation marks omitted). Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Serv., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, No. 08–CV–22278, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award"); *Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

Factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The above factors, as applied to this case, demonstrate the reasonableness of a service award of $2,500 to each Class Representative. Each Class Representative took numerous actions and provided substantial assistance to Class Counsel by, among other things, locating and forwarding responsive documents and information, and engaging in conferences with Class Counsel. (Ex. A (Weinshall Decl.), ¶¶ 19-21.) In so doing, the Class Representatives educated Class Counsel and helped Class Counsel form and advance the central theories of this case. (*Id.*) The Class Representatives not only devoted time and effort to this long-running litigation, but the

end result of their efforts and those of counsel was a substantial benefit to the Class.  (*Id.*)  It is only fair that these Class Representatives be compensated for their service.  (*Id.*)  And the requested service awards are in line with those routinely approved by courts.  *See, e.g., Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *11 (S.D. Fla. Sept. 6, 2019) ("The requested service award of $7,500 to each Class Representative is appropriate."); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *7 (S.D. Fla. May 24, 2019) (approving $10,000 service award).  The requested service awards are therefore reasonable and should be approved.

**IV.    Class Counsel's Fee Application.**

As indicated in the Court-approved notice disseminated to the Class, and consistent with District and Eleventh Circuit precedent, Class Counsel respectfully request a fee of $7,700,000, which represents approximately 13.4% of the estimated $57.3 million value of the Settlement. This fee request is far below the guidelines set forth by the Eleventh Circuit in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), and its progeny.  It also comports with fee awards regularly approved in this District.  For the reasons set forth below, the requested attorneys' fee award is appropriate, fair, and reasonable, and should be approved.

**A.   The Law Awards Class Counsel Fees From The Common Fund Created By Their Efforts.**

When a class settlement establishes a calculable monetary benefit for class members, attorneys' fees should be awarded to class counsel, under the longstanding common benefit doctrine, based on a percentage of the monetary benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  Following from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched," the common benefit doctrine "allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478; *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970).  The Supreme Court, the Eleventh Circuit, and courts in this District, therefore, have all held that "the law is well established that 'a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at *7 (S.D. Fla. Mar. 20, 2014) (quoting *Boeing*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action

in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

Appropriate awards of attorneys' fees in cases like this encourage redress for wrongs caused to entire classes of persons and deter future misconduct:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce . . . laws on behalf of persons with small individual losses, *a financial incentive is necessary to entice capable attorneys*, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, *time-consuming cases for which they may never be paid*.

*Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (emphasis added); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).  Given the risk, responsibility, and effort required, reasonable compensation in line with established precedent is necessary to ensure the availability of counsel for plaintiffs:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985); *see also Gevaerts v. TD Bank*, No. 1:14-CV-20744-RLR, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015) (holding that the common benefit doctrine serves the goal of "removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class") (internal quotation marks omitted).

In the Eleventh Circuit, in particular, class counsel fee awards must be based on a percentage of the common fund generated through a class action settlement.  In *Camden I*—the controlling authority in the Eleventh Circuit dealing with the issue of attorneys' fees in common-fund class-action cases—the court held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case.  Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."  *Camden I,* 946 F.2d at 774.

When using the percentage-of-the-fund approach, furthermore, "courts compensate class counsel for their work in extracting non-cash relief from the defendant in a variety of ways.  When

the non-cash relief can be reliably valued, courts often include the value of this relief in the common fund and award class counsel a percentage of the total fund." *In re: Checking Account Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2013 WL 11319391, at *13 (S.D. Fla. Aug. 5, 2013); *see Carter*, 2017 WL 2813844, at *5 (holding that fee award was "a reasonable percentage of the settlement value" when considering the value of an "enhanced warranty, which is itself a significant tangible benefit").

The well-established starting point or "benchmark" percentage for fee awards in the Eleventh Circuit is 25%, which then may be adjusted based on the circumstances of each case. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (directing district courts "to view [the 20% to 30%] range as a 'benchmark,' which 'may be adjusted in accordance with the individual circumstances of each case'") (quoting *Camden I*, 946 F.2d at 774-75 (observing that "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund")).

Our fee request, which amounts to approximately 13.4% of the estimated $57.3 million total value of the Settlement, falls below the Eleventh Circuit's benchmark. *See Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *11 (S.D. Fla. Sept. 6, 2019) ("The Court finds that 14% is materially below the amounts regularly negotiated in class actions within the Eleventh Circuit."); *Waters*, 190 F.3d at 1294 (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case); *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1203 (determining that "the 25% 'benchmark' should be considered a floor for a fee award in this case, and that the percentage should be adjusted upward" based on the circumstances of the case).

**B.  The *Johnson* Factors Support Class Counsel's Requested Fee.**

In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), the former Fifth Circuit identified the following twelve factors to consider in determining an appropriate fee award:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of

the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught*, 668 F.3d at 1242-43 (citing *Johnson*, 488 F.2d at 717-19). Because a fee of 25% of a common fund is the established "benchmark," however, courts in the Eleventh Circuit need not analyze the twelve *Johnson* factors unless "the requested fee exceeds 25%." *Faught*, 668 F.3d at 1242. Class Counsel's fee request is well below the 25% benchmark, and thus this Court need not consider the twelve *Johnson* factors to approve the requested fee. *Id.* Nonetheless, as explained below, it is clear that all pertinent *Johnson* factors favor Class Counsel's request.

### i. The requested fee comports with customary fees awarded in similar cases.

The fee requested here easily falls within the range of fees typically awarded in similar cases, particularly in this District and Circuit. As noted, scores of decisions have recognized that a fee award of 25% of a common fund is the benchmark in this District and Circuit. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1366; *In re Sunbeam*, 176 F. Supp. 2d at 1333-34. Numerous decisions in this District, alone, have awarded attorneys' fees far exceeding 25% as well, confirming the fairness and reasonableness of the fee requested here. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1366 (awarding fees of 30% of $410 million); *Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1210 (awarding fees equaling 31¼% of settlement of over $1 billion including interest); *Love v. Blue Cross & Blue Shield Assoc.*, No. 03-cv-21296 (S.D. Fla. Apr. 20, 2008) (ECF No. 1286) (awarding 38% of $130 million settlement); *In re Managed Care Litig.*, No. 00-md-1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding $50 million in fees and costs in settlement involving $100 million fund and non-monetary business practice changes).[9]

Class Counsel's fee request, moreover, falls at the low end of the average in the private marketplace, where contingency fee arrangements often approach or equal 40% of any recovery. *See, e.g., Kirchoff v. Flynn*, 786 F.2d 320, 325 n.5 (7th Cir. 1986) (observing that "40 percent is the customary fee in tort litigation"); *In re Pub. Serv. Co. of New Mexico*, 1992 WL 278452, at *7

---

[9] *See In re Vitamins Antitrust Litig.*, No. MDL 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (34.06% of approximately $359 million settlement); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (35.1%)); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) (finding that 33% is the norm, but awarding 38% of the settlement fund).

(S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery."); *see also In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market.").  "In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Class Counsel's requested fee, equivalent to 13.4% of the estimated $57.3 million value of the Settlement, comports easily with customary fees awarded in similar cases.[10]

> **ii.      The claims against Volkswagen required substantial time and labor.**

The substantial effort Class Counsel have brought to bear over the past two years prosecuting and settling the claims against Volkswagen also strongly supports the reasonableness of Class Counsel's fee request.  This effort has demanded the investment, on a contingency basis, of significant amounts of Class Counsel's time, labor, and resources.  (Ex. A (Weinshall Decl.), ¶¶ 24-25.)  Over the past two years, to advance Plaintiffs' claims against Volkswagen, Class Counsel have spent an extensive amount of time prosecuting the case against Volkswagen and have, among other things:

---

[10] *See also James v. JPMorgan Chase Bank, N.A.*, No. 15-cv-2424-T-23JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (30%); *Warren v. Cook Sales, Inc.*, No. 15-cv-0603, 2017 WL 325829, at *9 (S.D. Ala. Jan. 23, 2017) (30%); *Comeens v. HM Operating, Inc.*, No. 14-cv-00521, 2016 WL 4398412, at *4 (N.D. Ala. Aug. 18, 2016) (33⅓%); *Diakos v. HSS Sys., LLC*, No. 14-cv-61784, 2016 WL 3702698, at *7 (S.D. Fla. Feb. 5, 2016) (Scola, J.) (33⅓%); *Duque v. 130 NE 40th St., LLC*, No. 14-cv-23965, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016) (33%); *Camp v. City of Pelham*, No. 10-cv-01270, 2015 WL 12746716, at *3 (N.D. Ala. Dec. 16, 2015) (41%); *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 14-cv-01182, 2015 WL 12843849, at *2 (M.D. Fla. Dec. 7, 2015) (32%); *Gevaerts v. TD Bank*, No. 14-cv-20744-RLR, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015) (30%); *Vogenberger v. ATC Fitness Cape Coral, LLC*, No. 14-cv-436-FTM-29CM, 2015 WL 1883537, at *4 (M.D. Fla. Apr. 24, 2015) (33%); *Amason v. Pantry, Inc.*, No. 09-cv-02117, 2014 WL 12600263, at *3 (N.D. Ala. July 3, 2014) (30%); *Cifuentes v. Regions Bank*, No. 11-cv-23455-FAM, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014) (Moreno, J.) (30%); *In re Friedman's, Inc. Sec. Litig.*, No. 03-cv-3475, 2009 WL 1456698 (N.D. Ga. May 22, 2009) (30%); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-cv-61677-Martinez, 2008 WL 649124 (S.D. Fla. 2008) (30%); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30%).

- Conducted an initial investigation of claims against Volkswagen to develop the facts and legal theories that formed the basis of the allegations in the complaint and drafted and filed the complaint and the amended complaint.

- Interviewed and reviewed complaints from numerous consumers and potential class members to gather information about Volkswagen's conduct and its impact upon consumers.

- Prepared state-by-state legal assessments to determine which state common law doctrines and consumer protection statutes provided Plaintiffs with viable claims.

- Defended the complaint from a Rule 12(b) motion to dismiss filed by Volkswagen.

- Drafted and served interrogatories and document requests on Volkswagen, seeking relevant and probative documents and information in its possession—with an eye toward class certification, summary judgment, and trial.

- Participated in numerous meet-and-confer discussions with Volkswagen's counsel to resolve various discovery disputes pertaining to Plaintiffs' requests and discovery protocols.

- Established and staffed document review teams to review, sort, and code more than a large volume of documents produced by Volkswagen.

- Retained and worked closely with consultants and experts to analyze, among other things, technical aspects of the alleged defect and the measurement of Plaintiffs' damages.

- Convened numerous in-person and telephonic meetings to strategize and carefully review the development of Plaintiffs' case against Volkswagen.

- Prepared for and participated in numerous sessions of negotiations in an attempt to settle the Action, and after reaching an agreement in principle, engaged in lengthy discussions over drafting the terms of the Settlement Agreement.

(*Id.*, ¶ 24.)

All told, Class Counsel's steadfast and coordinated work paid great dividends for the Class. (*Id.*, ¶ 25.) Each of the above-described efforts was essential to achieving the Settlement currently before the Court. (*Id.*) Taken together, the time, expertise, effort, and resources Class Counsel devoted to prosecuting and settling this nationwide Action justify the fee Class Counsel are now seeking. (*Id.*)

### iii.     The issues involved were novel and difficult and required the exceptional skill of a highly talented group of attorneys.

This Court, we believe, regularly witnessed the high quality of Class Counsel's legal work, which has conferred an exceptional benefit on the Class in the face of daunting litigation obstacles and highly sophisticated defense counsel. As the Court is aware, it is a formidable and complicated challenge to successfully prosecute a case like this. Moreover, the orderly and effective

30

management of this Action, with claims against one of the world's largest automotive companies asserted on behalf of tens of thousands of consumers, presented challenges that many law firms and lawyers simply would not be able to meet.

Indeed, litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. The record before this Court establishes that the Action involved a wide array of complex and novel challenges, which Class Counsel met at every juncture based on their collective, extensive experience in complex litigation and class actions. Respectfully, the skill and diligence demonstrated by Class Counsel in this litigation supports the requested fee. (Ex. A (Weinshall Decl.), ¶¶ 26-28.)

The quality of opposing counsel with whom Class Counsel sparred also bears on an assessment of the quality of representation. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *accord Camden I*, 946 F.2d at 772 n.3; *Johnson*, 488 F.2d at 718. Volkswagen was represented by some of the most able, sophisticated, and diligent attorneys in the country, and they fought hard at every turn to protect their client's interests. (Ex. A (Weinshall Decl.), ¶ 28.) These were worthy, highly skilled adversaries.

### iv.        The claims against Volkswagen entailed considerable risk.

This Settlement was far from a foregone conclusion, evidenced by the preceding years of intense litigation. Volkswagen mounted vigorous defenses to Plaintiffs' claims, denying any and all liability in the Action. (*Id.*, ¶¶ 29-31.) The success achieved under these circumstances thus represents a genuine achievement.

In weighing the "undesirability" factor, courts consider, among other things, the "expense and time involved in prosecuting [the] litigation on a contingent basis, with no guarantee or high likelihood of recovery." *Waters v. Cook's Pest Control, Inc.*, No. 2:07-CV-00394-LSC, 2012 WL 2923542, at *18 (N.D. Ala. July 17, 2012). "[T]his factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336. "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit—not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

31

Prosecuting the Action was risky from the outset, with numerous obstacles to overcome. (Ex. A (Weinshall Decl.), ¶¶ 29-31.)  As discussed earlier, Volkswagen contested liability by denying the existence of any defect; it contested Plaintiffs' damages theories; and it certainly would contest a motion for certification of a litigation class.  (*Id.*)  Each of these obstacles and risks, standing alone, could have impeded Plaintiffs' successful prosecution of these claims at trial (and in any appeal).  (*Id.*)  Together, they overwhelmingly show that Plaintiffs' claims against Volkswagen were far from a "slam dunk" and that, in light of all the circumstances, the Settlement achieved an excellent class-wide result.  (*Id.*)

> ### v.      Class Counsel pursued this Action on a pure contingency basis, and were precluded from other employment.

Class Counsel prosecuted the Action entirely on a contingent-fee basis.  (*Id.*, ¶¶ 32-34.) Meeting the significant time and expense demands of the case limited the ability of Class Counsel to work on numerous other matters, all without any guarantee that such a substantial investment of time and effort would ever be reimbursed.  (*Id.*)  This significant risk of nonpayment or underpayment warrants the requested fee.

Numerous cases recognize that contingent-fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Cont. Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *accord Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir.); *York v. Ala. State Bd. of Educ.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns—especially ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose individual claims would defy vindication—further justify the requested fee award.  As courts in this District have observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . ***A contingency fee arrangement often justifies an increase in the award of attorney's fees.*** This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few

lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, ***especially in light of the risks of recovering nothing.***

*Behrens*, 118 F.R.D. at 548 (emphasis added).

The progress of the Action to date readily demonstrates the inherent risk that Class Counsel faced in prosecuting these cases on a contingency fee basis.  To mount the ongoing effort of conducting discovery in this Action and litigating before this Court for almost two years, Class Counsel have invested substantial resources in time and expenses, for the benefit of the Class in this Settlement.  (Ex. A (Weinshall Decl.), ¶¶ 32-34.)  It cannot be disputed that the Action entailed substantial risk of nonpayment and resulting financial hardship for Class Counsel's practices.  (*Id.*)  Furthermore, the time Class Counsel spent on the Action was time that could not be spent on other matters.  (*Id.*)  This factor strongly militates in favor of the requested fee.

> **vi.** **Class Counsel achieved an excellent result.**

As explained earlier, the Settlement represents an outstanding result for the Class.  With a total estimated value of approximately $57.3 million, the Settlement offers to compensate Class Members for the alleged harm that gave rise to this Action.  Instead of facing additional years of costly and uncertain litigation, tens of thousands of Class Members are eligible to receive an immediate benefit.  The Settlement represents an exceptional achievement by any measure.

In short, the pertinent *Johnson* factors further support granting Class Counsel's fee request.

<u>**CONCLUSION**</u>

The Settlement, with an estimated total value of approximately $57.3 million, constitutes an outstanding result by any measure.  The Settlement easily satisfies the fairness and reasonableness standard embodied in Rule 23(e) as well as the class certification requirements of Rules 23(a) and (b)(3).  Class Counsel's request for a $2,500 service award for each appointed Class Representative comports with well-established precedent as well.  Likewise, Class Counsel's fee request is reasonable under the circumstances of this case.  The request satisfies the guidelines of *Johnson* and *Camden I*, given the outstanding result, the considerable risks of litigation, the extremely complicated nature of the factual and legal issues, and the time, effort, and skill required to litigate claims of this nature to a satisfactory conclusion.

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court enter an Order that:

1.  Grants final approval to the Settlement;

2.  Certifies the proposed Class defined in the Settlement pursuant to Rule 23(b)(3) and (e) for settlement purposes only, appoints as Class Counsel the attorneys and firms identified as Class Counsel in the Preliminary Approval Order, and appoints as Class Representatives the individuals identified as Class Representatives in the Preliminary Approval Order;

3.  Approves $2,500 service awards to each appointed Class Representative;

4.  Awards Class Counsel attorneys' fees of $7,700,000; and

5.  Enters Final Judgment dismissing the Action, in accordance with a proposed Final Order and Final Judgment that the Parties will submit in advance of the Fairness Hearing.

Dated:  December 4, 2019

Respectfully submitted,

**PODHURST ORSECK, P.A.**

*/s/ Peter Prieto*
Peter Prieto (FBN 501492)
Matthew P. Weinshall (FBN 84783)
Alissa Del Riego (FBN 99742)
SunTrust International Center
One S.E. Third Ave., Suite 2300
Miami, Florida 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
Email:  pprieto@podhurst.com
          mweinshall@podhurst.com
          adelriego@podhurst.com

Peter J. Kreher, Esq.
Francesco P. Trapani, Esq.
KREHER & TRAPANI, LLP
1325 Spruce St.
Philadelphia, PA 19107
Phone: (215) 907-7290
Fax: (215) 907-7287
Email:  pete@krehertrapani.com
          frank@krehertrapani.com

Harris L. Pogust, Esq.
Pogust & Braslow LLC
161 Washington Street, Suite 940
Conshohocken, PA 19428
610-941-4204
Fax: 610-941-4245
Email: hpogust@pbmattorneys.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

By: */s/ Peter Prieto*
Peter Prieto